Tilghman C. J.
The record in this case presents two bills of exceptions, taken on the trial of this cause, in the Court of Common Pleas of Allegheney county. It is an action of dower, brought by Elizabeth Thompson, widow Moses Thompson deceased. 1. A deed from the said Moses Thompson and Elizabeth his wife, (the plaintiff,) conveying in fee simple the land in which dower is now demanded, to Robert Henderson, under whom the defendant claims, having been given in evidence by the defendant, the Court were of .. .. . . , opinion, that by virtue or this deed, the plaintiff was barred of her dower,.although it did not appear, that she was vately examined, by the justice of the peace who took her acknowledgment. This point having been decided in the case of Kirk v. Dean, 2 Binn. 341, and that decision recognised by this Court in several subsequent cases, it is unnecessary at present, to say any thing more, than that we consider the law as settled. There was error, therefore, in the decision of the Court of Common Pleas.
2. After the. conveyance by Moses Thompson to Robert Henderson, the land in which dower is claimed, (being a lot of ground in the city of Pittsburgh,) was increased in value by the erection of buildings; And the value was, besides, greatly increased, by the growth of the city and other causes, distinct from any buildings or improvements made by the *290 purchaser. The Court of Common Pleas were of opinion, that in assigning dower to the plaintiff, no regard was to be had to the gradual increase of value from causes unconnected with improvements made by the purchaser, but that the plaintiff was to have one-third, according to the value at the time of the alienation by Moses Thompson. It is a point of great importance to widows, and to all those who purchase from married men without legal conveyances from their wives. We have, therefore, had it twice argued, in order that we might avail ourselves of the industry and talents of the learned counsel on both sides. Dower is a claim founded on law, and favoured by Courts both of law and equity. It is a right flowing from marriage ; and marriage is so highly regarded as to be a valuable consideration for the settlement of property on the wife. By marriage, the husband acquires an absolute right in his wife’s personal estate, a right to the possession and profits of her real estate during the coverture, and also a right to her real estate during his life, in case he survives her, provided he has issue by her, and the estate be of such a nature, that the issue may, by possibility, inherit it. In return for all this, the law gives to the wife, in case she survives her husband, one-third for her life, of all the real estate whereof her husband was seised at any time during the coverture, whether she have issue by him or not, provided the estate be of such a nature, that any issue which might have been born, might, by possibility, have inherited it. The right of dower is inchoate, on the marriage, but not consummate till the death of the husband. No act of the husband can lessen or defeat it. But, during the marriage, his right is absolute; he may improve the estate, or suffer it to lie waste; erect buildings or pull them down at hi? pleasure. All that the wife can claim, where the husband dies seised, is one-third of the land in the condition in which it is found at the time when her title is complete, viz. at the death of her husband. But if after her title is thus complete, and before assignment of dower, the heir erects buildings, or makes other improvements, the widow shall be endowed of one-third part of the estate, according to its value at the time dower is assigned to her; because it was the folly of the heir to make improvements on land which he knew to be subject to dower. Co. Litt. 32. a. sect. 36. The law is different, however, when the husband aliens the land dur *291 ing coverture, for there the wife shall derive no advantage from any improvement made by the alienee. There is no injustice in this, for, if the husband had never aliened, he might not have made these improvements. And it would affect the prosperity of the countj', by discouraging improvements in building and agriculture, if the wife were to be endowed of one-third of the value, including these improvements. This I take to have been the main reason for excluding the wife from any part of the value arising from improvements ; although we find in the old books, another reason assigned, that is to say, that as the tenant in dower, who vouches the heir on a warranty of his ancestor, must recover of the heir, according to the value of the land, at the time of the alienation, it would be unreasonable that the widow should recover of the tenant according to any other value. So far as concerns improvements made by the alienee, it is agreed that the tenant shall be protected from this hardship ; but as to any value which may chance to arise, from the gradually increasing prosperity of the county, and not from the labour or money of the alienee, it would be hard indeed upon the widow, if she were precluded from taking her share of it. She runs the risk of any deterioration of the estate, which may arise either from public misfortune, or the negligence, or even the voluntary act of the alienee ; for although he destroy the buildings erected by the husband, the widow has no remedy, nor can she recover any more than one-third of the landas she finds it at the death of her husband. Perk. sect. 8^9. There are' not many authorities on this subject to be found in the English books, and such as we have are bottomed on decisions said to be reported in the year books. Mr. Hargrave, in his note on Co. Litt. 32. a. sect. 36. cites 1 H. 5. 11. 17 E. 3. 17 H. 3. Dower, 192. 31 Ed. 1. vouch. 288. “ If the feoffee improve by buildings, yet dower shall be, as it was in the seisin of the husband, for the heir is not bound to warrant except according to the value as it was at the time of the feoffment; and so the wife would recover more against the feoffee, than he would recover in value, which is not reasonable.” It is to be remarked, that the decision in the ca.=.es here cited, was upon improvements by buildings, erected by he feoffees; the decision therefore, was clearly right, although a better reason might, perhaps, be given, than that which is said to be assigned for it, in the year books. In Jenk. Cent. *292 pa. 34, 35, case 68, in which the year book 47 E. 3. 22, is cited, we have the law laid down as follows : “ On voucher, if special matter be shewed by the vouchee, viz. that the land at the time of the feoffment was worth only 100/., and now at the time of the voucher, is worth 200/, by the industry of the feoffee, the tenant shall recover only the value as it was at the time of sale, for, if the act of the feoffee has meliorated the land, this shall not prejudice the feoffor in his warranty.” Here is satisfactory reasoning indeed. The warrantee shall not, by any acts of his own, increase the responsibility of the warrantor, for that would, in effect, be to alter the contract of warranty. But even granting that the tenant, who vouches the heir, can recover from him only according to the value at the time of the alienation, this being the true construction of the warranty, the wife of the feoffor, who is no party to the warranty, ought not to be injured by it. So far as her rights are concerned, she ought not to be affected, but by those reasons of policy and justice, which apply to her case; reasons which extend only to improvements made by the feoffee. As the year books are principally relied on, by those who contend, that the widow is to recover, according to the precise value at the time of the alienation, I endeavoured to trace the subject through those books, but met with great difficulty, from the imperfection of the printed editions. I believe I have seen all which have ever been printed, but it appears by a report of a committee of the British house of commons, appointed for the purpose of enquiring into the state of the public records, in the year 1800, that although there are year books, from the reign of Edward 1, (inclusive) to the 1st of Henry VIII, yet in the printed editions, there are the following chasmsthe whole reign of Edward I, (except some short notes in the exchequer:) of the reign of Edxvard III, ann. 11 to 16-, ann. 19, 20. and 31. to 37: whole reign of Richard II, of Henry V, ann. 3,4. and 6: of Henry VII, ann. 17, 18, 19. And it appears from the same report, that in some instances, the manuscripts contain different reports of the same cases. It is to be remarked in general of such reports as we have in these books, that they are often so short, as to be obscure and unsatisfactory. With respect to dower however, I have found no adjudged case in the year books confining the widow to the value at the time of the alienation by her bus- *293 band,' where the question did not arise on improvements made after the alienation. In our own State, it does not appear, that the point now in question has been decided, although I have certainly considered the general understanding to be, that the widow should have, the advantage of all increase of value, not arising from improvements made after the alienation. And such I know to have been the opinion of my deceased colleagues, Judges Yeates and Brackenridge. As to the case of Winders v. Little, 1 Yeates, 154, although the point on which the Court decided is not expressly stated, yet enough appears to satisfy me, that it was a question on improvements. By the Supreme Court of New York, justly commanding the highest respect, the law has been held differently. But they have a statute of their own, by which this matter is regulated. It is true, that Court, in delivering its opinion, did say, that the statute made no change in the common law: still, however, the decision was upon the statute, and therefore, what was said of the common law, ought not to be considered as more than a dictum. The New York cases on this subject, will be found in 2 Johns. 484. 11 Johns. 510. 15 Johns. 179. In Massachusetts, the Supreme Court have in several cases decided, that so far as concerns buildings, or other improvements, the widow shall take her third according to the value, exclusive of the improvements, 9 Mass. Rep. 218. 9 Mass. Rep. 8. 10 Mass. Rep. 80. 13 Mass. Rep. 227. But as to increase of value not arising from improvements, the opinion of the late. Chief Justice Parsons may be collected from what fell from him, in the case of Gore v. Brazier, 5 Mass. Rep. 544. His words are these: “ If the husband, during coverture, had aliened a real estate in a commercial town, and at his death the rents had trebled, from causes unconnected with any improvement of the estate, and the widow should then sue for her dower, perhaps it might be difficult for the purchaser to maintain, that one-ninth only, and not one-third should be assigned to her.” I am not aware, that this opinion has ever been contradicted in Massachusetts, and therefore, I presume that the law is held there, in conformity to it. Having considered all the authorities which bear' upon this question, I find 'myself at liberty to decide, according to what appears to me to be the reason, and the justice of the case, which is, that the widow shall take no advantage of *294 improvements of any kind, made by the purchaser, but throwing those out of the estimate, she shall be endowed, according to the value, at the time her dower shall be assigned to her. The judgment is therefore reversed, and a venire facias de novo awarded.
Judgment reversed, anda venire facias de novo awarded.