Judge Wood
delivered the opinion of the court:
The complainant, widow of Andrew Dunseth, filed her petition in the court of common pleas of Hamilton county, claiming dower in certain lands in the city of Cincinnati.
The lands were alienated by the husband, and finally passed to the Bank of the United States.
The complainant obtained a decree in the court of common pleas, and the defendant appealed.
All the facts necessary to establish the complainant’s right to dower in the lands in question, viz : that they can not be divided without injury; that the complainant can not, therefore, be endowed *in kind; and her consequent right to be endowed of [77 one-third part of the rents, issues, and profits of the land, according to their value, are admitted by the parties ; and the only question submitted for our determination is, at what time shall the value of these lands be ascertained?
This, it is conceded, is an important inquiry, and it is believed there is at this time a diversity of opinion upon it among the members of the bar. This is the first time it has been presented to this court for decision, and we extremely regret the counsel for the deiendant have not furnished us that aid, in pursuing our inquiries, their research and reflection are so fully competent to afford. We are not only denied the assistance of their argument *80 but also a reference to a single authority on which they rely! Principles esteemed so important as to require the deliberation of the whole court, ought always to receive the most free and liberal discussion.
We have endeavored, however, to give this case the most mature and deliberate consideration, and are unanimously agreed in the conclusions to which our minds have been led.
Dower is a claim flowing from marriage, and marriage is so highly regarded as to be a valuable consideration for the settlement of property on the wife. It is a right founded on law, and favored by courts both of law aud equity. 5 Serg. & Rawle, 290. By marriage, the husband becomes entitled to the services of his wife. He has the control and custody of her person. If she is seized of an estate of inheritance in land, the husband becomes seized of the freehold, jure uxoris, and he tabes the rents and profits during their joint lives. Coke’s Littleton, 355. The husband may reduce to possession the choses in action of the wife, and by operation of the law, they are his own. He, by the marriage, succeeds to the personal property of the wife. It vests immediately and absolutely in the husband; he can dispose of it at pleasure; and, .n case of his death, it goes to his representatives. These are some of the disabilities which, by the marriage, the law casts upon the wife.
In return for these, to provide for her support, and to enable ber to nurture, sustain, and educate her children, in case she survive the husband, the law gives her one-third part of all the lands of which her husband was seized as an estate of inheritance during the coverture, during her life. It is a claim sanctioned by long-established usage, so ancient that its origin is now lost in doubt 78] and uncertainty. In 2 Bl. Com., tuck. ed. *130, it is said that dower is possibly the relic of a custom of the Danes; but, however this may be, Lord Coke informs us, it is one of the three favorites of the common law. Kent, in the fourth volume of his Commentaries, 36, calls it a “humane provision,” which has continued unchanged in the English law to the present times, and, with some modifications, has been everywhere adopted as part of the municipal jurisprudence of the United States.
The statutes of the several states, in relation to dower, it is believed, have constantly received a most liberal and beneficial con* *81 struct]on, and have been considered as entitled to the favorable consideration of all courts of justice.
The law favors the assignment of dower by metes and bounds, but where that assignment can not be made, dower is to be assigned of one-third part of the rents, issues, and profits of the lands, according to their value. Here, then, we are brought back to the inquiry, “ at what time shall the value of the lands be ascertained?”
The statute of 1823, vol. xx, 249, under which this claim is made, so far as it is necessary to be considered, is but a recognition of the common law principles, and is similar to the statutes of Massachusetts and Pennsylvania. The identical question now before us is discussed by Chancellor Kent. 4 Kent’s Com. 67. Ho says the better and more general doctrine is, in this country, that the improved value of the land from which the widow is to be excluded, in the assignment of her dower, even against a. purchaser, is that which has arisen from the actual labor and money of the owner, and not from that which has arisen from extrinsic or general causes. The same principles were laid down by Chief Justice Parsons, in the case of Gore v. Brazier, 3 Mass. 544.
We are of the opinion that these principles stand upon reason and justice for their support. If the lands diminish in value, subsequent to the alienation, the widow is, it is conceded, subjected to the loss; and if they rise in value from any other cause than the acts of the alienees, such as the general prosperty of the country or neighborhood, it would seem to be the most consummate injustice not to permit the widow to partake of the general prosperity.
Chief Justice Tilghman, in 1819, in the case of Thompson v. Morrow, 5 Serg. & Rawle, 289, in a very learned and elaborate opinion, reviewed the English decisions, including those contained in the year books, and declares there is no principle of *the [79 common law that will exclude the widow from the increased value of the lands arising from other causes than improvements made by the alienees, and that the decisions in Massachusetts and New York sustain him in his opinion. He concludes his remarks in this case by saying, that he has consulted all the authorities which bear upon the question, and he finds himself at liberty to decide according to what appears to him to be the reason and justice of the case; which is, that the widow shall take no advantage *82 of the improvements of any kind made by the purchaser; but. throwing those out of the estimate, she shall be endowed according to the value, at the time her dower shall be assigned to her.
This question was again discussed, in 1824, by Mr. Justice Story, in the Circuit Court of the United States, for the first circuit, in Massachusetts, and decided, under the laws of that state in relation to dower. All the cases, English and American, were again reviewed. The judge cites the above opinion of Chief Justice Tilghman; accedes to his reasoning; declares the doctrine stands on solid principles and the general analogies of the law. Powell et ux. v. Monson S. B. Manf'g Co. 3 Mason, 375.
Opposed to these authorities, is the dictum of a dissenting judge on a point not made in the cause: that the value of the lands-was not to be ascertained, at the time of the alienation, had been determined in the case of Ewing v. Stanbery. However much we may respect the opinions of that very learned and distinguished judge, this mere dictum, in relation to a circuit decision, can not be claimed as an authority. We choose rather to-adopt the opinions of Kent, Parsons, Tilghman, and Story, “ that the widow should be endowed of the rents, issues, and profits of the lands, according to their value, on the assignment of her dower,. excluding all increase of value from the money or improvements of the alienees, and including all increase from other extrinsic and general causes.” Let a decree be drawn accordingly.