## Wooldridge, Appellant, *v.* Wilkins *et al.*

In proceedings in a probate court, objections must be taken to the pleadings before trial on the merits, or the appellate court will not inquire into their regularity.

W. was appointed consul to one of the commercial ports of Texas, where he removed in 1835, and died in 1836. He stated at the time of his removal, that he intended to resign his consulate and settle in Texas, with a view to practise law, but there was no evidence of his having carried this intention into effect: *Held*, the facts do not constitute expatriation.

The certificate of the clerk of the register of the land office is not legal evidence of the entries of land. The books of the register being public in their nature, it is competent to prove their contents by a sworn copy.

When the officer who has the custody of a patent refuses to deliver it, parol testimony is not admissible to prove its existence, but a *subpœna duces tecum* must be applied for.

Where land is conveyed and a mortgage given immediately to secure the purchase money: *Quære*, as to whether the wife of the mortgagor is entitled to dower.

In proceedings for dower those deriving title from the husband will not be permitted to deny his seisin.

Lands purchased by partners under an agreement that they shall be sold for the benefit of the partnership, will be regarded as joint stock, and will be likewise so considered, though there be no agreement, if there be such an application of them to the purposes of the concern as evidences an original understanding of the parties, that the lands are to be treated as such, and not as estate in common. But where there is no such agreement, nor such an application of the lands as evinces the original understanding to have been that they were considered as joint stock, the wife of a deceased partner is entitled to dower in the lands.

The widow is endowable of lands according to their value at the time of the alienation of the husband; she can not have any benefit, so far as regards improvements effected by the money or labor of the alienee.

APPEAL from the probate court of Hinds county.

The demandant, who is the appellee in this court, filed her petition in the probate court of Hinds county, in September, 1836, in which she demanded dower of certain lands and town lots, of which her husband, the late Thomas Wooldridge, was seised and

[Wooldridge, Appellant, *v.* Wilkins *et al.*]

possessed during their coverture. The lands and lots were particularly described in the petition. At the filing of the petition, Benjamin Wilkins and Patrick Henry, on their motion, were made defendants for the purpose of contesting the claim of dower of all the lands described by sectional subdivisions, except the west half of southwest quarter of section 12. Dower out of this tract was resisted by Samuel C. Faulkner, and of the two lots in the town of Clinton, by James Perry, Thomas Harmy, Benjamin W. Edwards, James M'Laurin, Samuel C. Faulkner, and Alfred and Frederick Johns, who were likewise made defendants to the proceeding.

It appeared upon the trial, that 719 90–100 acres of the lands claimed by Wilkins and Patrick Henry were purchased by T. Wooldridge, from a certain John J. Wilkins, on the 28th day of December, 1829; and that on the same day, Wooldridge gave Wilkins a mortgage in fee for the same to secure the payment of the purchase money. His wife did not unite in the mortgage; Wooldridge remained in possession of the land until the 26th day of July, 1830, when he conveyed the same to Charles Anderson in fee. His wife united in the deed, but was not examined as the law requires. It was subsequently aliened several times, and after passing through several alienees, was finally purchased by Benjamin Wilkins and Patrick Henry the present defendants. The seisin and possession of Wooldridge of the 9 acre lot in Clinton, is admitted, and the claim of dower not seriously contested. This lot was mortgaged in the lifetime of Wooldridge, but his wife did not join in the deed. The two lots in Clinton, which were described in the proceedings as partnership lots, were purchased by the husband of the demandant jointly with his brother, Gibson C. Wooldridge, who was then his partner in the mercantile business, with partnership funds, and were sold to pay partnership debts. There was no proof that the mortgage to John J. Wilkins of the 719 90-100 acres of land had been satisfied.

It also appeared, that Wooldridge was appointed consul to one of the ports in Texas, and removed there in 1835, taking his wife with him, and died in 1836. He had declared an intention to resign his consulate, and settle in that province in the practice of the law, but it did not appear he had done so.

VOL. III.—31

[Wooldridge, Appellant, *v.* Wilkins *et al..*]

The petition asserted claim to dower in the lands "on the endowment of the husband."

The defendants below offered to prove that improvements had been made on the lands since the sale by Wooldridge, which was rejected by the court. The probate court decreed dower to the demandant of all the bonds and lots described in the petition to be allotted to her by metes and bounds. From which decree there was an appeal to this court.

Hutchinson, for the appellants.

Of what was demandant endowable?

1. One third of the lands whereof her husband died seised and possessed, or had before conveyed, whereof she had not relinquished her right of dower as provided for by law. Code, 230.

This last clause could not embrace lands aliened prior to the marriage, and must mean lands conveyed during coverture; and if he had conveyed, during coverture, lands of which he had been neither seised nor possessed, the legislature could not have intended her to be endowed of them also: so that other words must be understood, though not expressed, namely, seised and possessed. Both words are essential, for to say lands of which he was seised would give dower in such as he held on a naked trust. The latter clause must read thus—or lands seised and possessed by him during coverture to which she had not relinquished.

2. Of lands whereof he died possessed, and which he had purchased of the United States, the payment for which is not completed. Code, 232.

3. Where lands are held in trust, or to the use of the husband, who has such inheritance in the use or trust as if it were a legal right whereof she might have dower. *Ibid.*

4. Of a joint tenancy, if her husband die seised, and of which partition was not previously made. Code, 236.

What her remedy?

As to lands of which he died seised and possessed, &c., of all the classes but the third by petition to the probate court, but of an use or trust "by the remedy proper in similar cases;" Code, 232; and that plainly by bill in equity.

[Wooldridge, Appellant, *v.* Wilkins *et al.*]

1. Her petition does not " set forth the nature of her claim." Code, 231. It does not assert that her husband died seised and possessed of all or any of the lands, whether of any she claims, because he, during coverture was seised and possessed and aliened, she not relinquishing, or whether she wishes to avail of any equity he left her.

2. Her alienage. Her husband expatriated himself. He became a citizen of Texas. She, at the time of her petition, was an alien—had a grant in Texas, which gave her citizenship there. She was expatriated. Jackson *v.* Dewett, 1 Cowen, 89.

3. Of the 719 90-100 acres, her husband never had seisin to support or to originate her contingent right. The deed of J. J. Wilkins, and T. Wooldridge's mortgage to him, of December 28, 1829, were coetaneous, and of such instantaneous seisin, she was not dowable. 6 Johns. Rep. 290; 15 *Ibid.* 458, 461; 14 *Ibid.* 89; Holbrook *v.* Finney, 14 Mass. Rep. 351, 566; Green *v.* Green, Ohio Rep. 244; Whitehead *v.* Middleton, 357.

At the sale to C. Anderson, T. Wooldridge had only an equity of redemption, the prior mortgage being unsatisfied: she not having any right for the want of his seisin, he might alone release the equity he had, or alien it, and after either there was foundation left, on which to build dower. 4 Leigh; 6 Cowen, 316; 4 and 14 Mass. Rep.

The purchaser of T. Wooldridge's equity acquired the right in his stead, to extinguish the mortgage. What was paid, if any, was by the purchasers under Anderson's deed applied to remove the lien.

Faulkner, and those under him, took only what passed from Wilkins; land encumbered. Was he, were they, bound to remove that incumbrance, after paying full value, after getting her signature, &c., and then yield to her one-third also?

She could have dower of an equity only of which her husband died vested. 4 Leigh; 6 Cowen, 316. The mortgage is still outstanding, there being no proof of payment, nor any release. Rev. Code, 460.

4. If this were an equity, of which she was endowable, she is not in the right forum. She could only claim it in a court of equity, by impleading the personal representative of any of the

heirs of J. J. Wilkins, as well as the tenants, and stating the nature of her claim, praying the lands to be valued with a view to her endowment according to its worth at the conveyance to Anderson. 2 Robinson's Practice, 5, 6, 7.

5. If she were endowable on petition, then the evidence of values offered ought to have been received, and her third allotted according to the value at alienation. Humphrey *v.* Phinny, 2 Johns. Rep. 484; Maria Dorchester's Case, 11 *Ibid.* 510; Mrs. Doff's Case, 15 *Ibid.* 23; 1 Robinson's Prac. 491; *Ibid.* Equity, 6. Though this rule is declared by statute in New York, yet there it is held to be no new rule, but the ancient common law principle. 13 Johns. Rep.

6. She shared with him in the product of alienation, and having signed the deed to Anderson, her brother, now her agent, and our prosecutor, her claim is a fraud of the deepest dye. 2 Mod. 40; 8 *Ibid.* 35; 16 Vesey, 253; 4 Munf. 449; 11 Johns. Rep. 564; 6 Johns. Chan. Rep. 166; 6 Vesey, 174.

As to the west half of the southwest quarter of section 12, township 6, range 1 west, claimed by B. Wilkins, and J. J. Henry, and also by Faulkner. This tract was mortgaged by T. Wooldridge, to Hall, Edwards, and Flournoy, who, by T. Wooldridge's written consent, conveyed to Faulkner. He conveyed to B. Wilkins and J. J. Henry. Faulkner is holder of the 5000 dollar note, secured by the mortgage. There was no proof of the ownership or seisin in T. Wooldridge whatever.

7. The seventh point then is, can seisin be presumed? What right had he? Was it only an equity? Or naked possession? Whatever it was, it passed by the mortgage to those claiming under it.

Then as to the two forty acre tracts claimed by B. Wilkins, and J. J. Henry. No title in T. Wooldridge was shown, nor any proceeding from him. The tenants defend under their possession.

8. No dower can be given of these tracts, for want of seisin in the husband.

As to the nine acre lot, containing the dwelling, as seisin in the husband, prior to the mortgage to Hall, &c., is shown dower

[Wooldridge, Appellant, *v.* Wilkins *et al.*]

cannot be contested, except on the first preliminary and general objections.

9. No title in T. Wooldridge was shown. This lot was included in the mortgage to Hall, &c., and was sold and conveyed by the marshal to the tenants, who claim under that sale and the mortgage. Can it be held that the wife is dowable of any land the husband may mortgage whether his or not, or which may be sold in execution, whether his or not?

10. As to the partnership lots, they were purchased by the funds of T. and G. C. Wooldridge, as partners, conveyed to them as such, converting them into partnership stock, without an agreement being needed, were sold by them as partners for the firm's debt.  Green *v.* Green, Ohio Rep. 244; Smith *v.* Smith, 5 Vesey, 189, 198; Featherstonhaugh *v.* Fenwick, 17 *Ibid.* 228; Bell *v.* Phyn, 7 *Ibid.* 454, 425; Craig *v.* Leslie, 3 Wh. 543; 2 Day, 514; 6 Mass. Rep. 242; 11 *Ibid.* 249, 472; 2 Johns. Rep. 280, 484; 2 Dessauss. 471; Delany *v.* Hutchinson, 2 Rand. 183; Gow, 48, 288, 293.

If the deeds to the firm created a joint tenancy, still that continued with the *jus accrescendi*, until one of the tenants should die seised, so as to entitle his wife to dower.  Rev. Code, 236.

Anderson and Thompson, on the same side.

Hughes, for the appellees, contended,

1. An application for dower in lands, which had not been sold during the coverture.  As to the two forty acre tracts, there is no proof that they were sold or adversely held.  The court should have admitted the proof offered, and should have assigned dower; which was done on other grounds, and this is right.  Park on Dower, 17.

2. Cases where the property has been sold during coverture, and the wife has not been examined according to statute, as in the case of the lands as to which defence is made by Wilkins, Henry, and Faulkner.  In these cases dower was assigned or directed to be assigned, and rightly.  It can make no difference that Wilkins had a mortgage.  He is not contesting, but those who are contesting, hold under the seisin of the husband. Whitehead *v.* Middleton, 2 How. Rep. 692.

31*

3. Cases where the property was purchased by the firm of T. & G. C. Wooldridge, with the funds of the firm, and sold to pay the debts. Thomas Wooldridge, having died before Gibson, in this estate the wife should have been endowed. Green *v.* Green, 2 Hammond's Ohio Rep. 535; Ohio Cond. Rep. 227.

Upon the question of the amount of dower to be assigned to the widow, where the estate has been sold during the coverture. The counsel insists, as he did during the argument, that where the dower, as in our statute, is to be assigned by metes and bounds, there can be no assignment of value. And he still insists, notwithstanding the authorities read on the other side, that such is not the common law; that in such a case by the common law the assignment was not by metes and bounds, but according to the value. But, by our statute, the assignment in both cases, as well in the case of seisin at the death of the husband, as when alienation has taken place during coverture, the assignment must be by metes and bounds.

Mr. Justice Trotter delivered the opinion of the court.

An objection has been taken in this court, to the sufficiency of the petition for dower, principally because it does not aver seisin and possession in the husband during coverture. There is not a formal averment of this fact, but there is a claim of dower of the land described, " on the endowment of the husband," &c. This is not perhaps so technically exact as, according to the strict rules of pleading, is thought necessary; but, without determining upon the question of pleading, we think the objection is now too late. It should have been made in the court below. The defendants severally approved and contested the claim of dower upon the merits, and cannot now go back to the sufficiency of the pleadings. We will here notice another of the preliminary questions presented by the assignment of errors. It is on the effect of the proof adduced in support of the alleged alienage of Thomas Wooldridge and his wife. It appears, that he had been appointed, by the government of the United States, consul for one of the commercial ports of the province of Texas, and that he removed to that country early in the year 1835, carrying his wife with him. He remained a short time and died. Mrs. Wooldridge returned

[Wooldridge, Appellant, *v.* Wilkins *et al.*]

to this state in the spring of 1836. He stated in conversation about the time of his departure for Texas, that he intended to resign his consulate, and settle in that province, with a view to practise law. But there is no evidence of his having done so, and we think it probable that it was a mere loose, speculative suggestion, not intended seriously to be acted upon. The proof of a grant, we think, could not authorise the inference that he had become a citizen of Texas. Without stopping, therefore, to inquire what would be the effect of expatriation by a citizen of this country upon his rights of property acquired here, we are satisfied the proof received or offered, did not, and could not establish the fact.

It is assigned also as error, that the court below received the mere certificate of the clerk of the register of the land office, as evidence of entries upon the books of the office, showing, that the west half of the southwest quarter of section 12, and the two forty acre tracts of land described in the petition, had been purchased by Wooldridge. As the books of the register were public in their nature, it was competent to prove their contents by a sworn copy. Swift's Ev. 22, 23. And so the court below adjudged, and as the record shows, refused the proof. The oral testimony of Charles Anderson, which was admitted to prove the existence of the patent, was inadmissible. And if, as it was alleged, the officer who had it in possession refused to deliver it, a subpœna *duces tecum,* should have been applied for. Swift's Ev. 107; 9 East, 473. But this error cannot affect the claim of the demandant, because the defendants who resist it, have derived title from her husband and cannot be heard to deny his seisin. The other errors assigned may be included in three questions.

1. Is the demandant entitled to dower of the 719 90-100 acres purchased of J. J. Wilkins?

2. Can she claim dower of the partnership lots?

3. Is she entitled to dower according to the value of the land at the time of alienation or of the assignment?

The first question presents a very interesting subject of inquiry, and one concerning which there appears to be much diversity of opinion. The mortgage to J. J. Wilkins was made on the same day with that on which the deed for the land was executed. And

it is said, by this contemporaneous transfer Wooldridge was never seised so as to give the wife the right of dower. That the mortgage and the deed are to be taken as constituting parts of an entire transaction, and that his seisin was instantaneous, and that the same act which conveyed him the land passed it out of him. It is not deemed important to enter into an investigation of the applicability of the doctrine of instantaneous seisin to the case before us. We will barely remark, that, notwithstanding the numerous decisions by the highest judicial tribunals of several of the states, which have pronounced the husband in such case not to be seised so as to give dower, it is a question as we conceive by no means free from difficulty. In England it has been repeatedly decided, that if the husband be seised but for a moment, the wife shall have her dower. In Broughton *v.* Randall, Cro. Eliz. 502, 3, the father and son were joint tenants, and were hanged together, but the son showed tokens of life by struggling, after the father was dead. It was held that he was the survivor, and entitled to the land, so as to give his wife dower. In Nash *v.* Preston, Cro. Cha. 190; J. J., being seised in fee bargained and sold the land to husband for 120 pounds, in consideration that he should re-demise it to J. S. and wife for their lives, and on condition that if he paid the 120 pounds, at the end of twenty years, the bargain and sale should be void. The bargainee re-demised and died, and it was held, that his wife was entitled to dower. This is a much stronger case as we conceive for the doctrine insisted on, than the one we are considering. There was a conveyance by J. S., in fee. So it is exactly in the case before us, but the condition to re-demise was part of the deed itself. The re-conveyance was in pursuance of this condition, and it was yet held in this case, that the husband had such a seisin as to confer dower on the wife. It is said in Blackstone, Comm. 2, 32, 133, that if the land abide but an instant in the husband it is sufficient. And where a tenant at will made a feoffment in fee and died, and his wife brought dower, the feoffee was estopped from saying that feoffer was not seised. Taylor's case, cited in Sir William Jones, 317. The result of these authorities is, that no exact time is essential to create a seisin. That if the husband has once received the title, it is immaterial how long it may reside with

him.  The right of dower has attached and cannot be defeated by his subsequent alienation.  The rule of an instantaneous, transitory seisin is applicable, we conceive, to cases where the husband is the mere conduit pipe to pass the inheritance, and where seisin is in and out of him *uno flatu.*  It is difficult to conceive how this can be said of a case where the husband is seised under a conveyance for his benefit.  Or how his right to make the mortgage results.  In Stow *v.* Tift, 15 Johns. Rep. 458; Holbrook *v.* Finney, 4 Mass. Rep. 566; and Clark *v.* Monroe, 14 *Ibid.* 351; it was held in cases situated like the present, that there was no seisin.  In one of the cases in New York, Judge Thompson dissented, and in a separate opinion, produced a train of decisions, and many sound and weighty reasons against the rule insisted on by a majority of the court.  The law is now settled, however, in New York and Massachusetts, and it is not important in this case that we should express a decided opinion.  If the present case turned upon the rule we should not hesitate to pronounce our opinion frankly and boldly.  It has been decided both in New York and Massachusetts, however, that on a foreclosure of the mortgage and sale of the mortgaged premises, the widow is entitled to her claim to the extent of her dower in the surplus proceeds after satisfying the mortgage, and that if the heir redeems, or she brings her writ of dower, she is let in for her dower on contributing her proportion of the mortgage debt.  Tabele *v.* Tabele, 1 Johns. Cha. Rep. 45; 5 *Ibid.* 482; 5 Pickering, 146.  Be this, however, as it may, and we are not inclined to give any decisive opinion upon it, the effect of the rule is to deny the wife dower only as against the mortgagee and those claiming under him.  She has in such a case a legal claim of dower against all the world besides, and until an entry or foreclosure by the mortgagee her right cannot be questioned.  Hitchcock *v.* Farrington, 6 Johns. Rep. 290; Collins *v.* Torry, 7 *Ibid.* 278; 15 *Ibid.* 319; 5 Johns. Cha. Rep. 452.  The rule established in these cases regards the husband as legally and equitably seised in respect to all the world but the mortgagee and his assigns.  As to third persons, it is only regarded as a pledge for the payment of money with which they have no concern.  The mortgagor is regarded as the real owner, and the estate passes to his real representatives.  6 Johns. Rep. 290; Cruise's Digest, tit. 15, C

1. And Lord Mansfield declared in one case, that it was an affront to common sense to say, that the mortgagor was not the real owner of the lands. Douglas, 632. If, then, as against all the world except the mortgagee, the husband is regarded as the real owner, why may not the wife be regarded as having likewise the legal claim of dower? Why not put her on a footing with the heir, and let her take dower subject to the mortgage? We take it to be the true rule deducible from authority, that if the wife does not unite in the mortgage in cases where the husband is seised in fee, her rights are not affected, even as regards the mortgagee. That if she unite, then she has only an equitable claim to dower, and if the land is sold under the mortgage, to her claim of dower in the surplus proceeds if any. 1 Johns. Cha. Rep. 45; 5 *Ibid.* 482. In case she unites in the mortgage she has, as against third persons, a legal claim to dower and is not driven to redeem. In accordance with this principle it has been held that the wife's interest in the equity of redemption in a mortgage executed by her and husband was not destroyed by a sale of that equity under an execution at law against him, and that the purchaser took the land subject to the wife's dower. Harrison *v.* Eldridge, 2 Halsted, 392; Barker *v.* Parker, 17 Mass. Rep. 564. The purchaser under the execution in these cases cannot be considered as standing on worse ground, or holding any other relation than a purchaser under a sale by the mortgagor, and the equity of redemption is all that is sold in either case. At common law the wife was not dowable of an equity of redemption, though the husband was to courtesy. Our statute has put dower on the same footing in this respect with courtesy, and in sales by the husband of an equity of redemption, the purchaser takes it subject to the rights of the wife, and that in such case she would be in no worse condition than if the equity descended to the heir. In the latter case she could proceed at law for her dower, and since the act, the heir would not be permitted to plead the mortgage in fee, though unsatisfied, in bar. But as against the creditor, her remedy is only in equity, and if he comes in to foreclose, he will be entitled to the whole of his debt, and if neither the heir nor widow redeem and the land sells for more than the debt, the excess is the value of the equity of redemption, and she can only

be endowed of one third of such excess. 1 Rand. Rep. 347. The very ingenious and forcible argument of the counsel for the appellants, upon this branch of the case, was based upon the consideration of the question as between the widow and the creditor or mortgagee. At common law, if the husband mortgages in fee before marriage and never redeems, he has never been seised during the coverture, so that the legal title to dower has never accrued, but there is an equity of redemption in him which descends to the heir, and in which the wife can now claim dower under the statute. But as against the mortgagee she must go to equity to assert her claim, and redeem by paying one third of the debt. And in the present case as seisin in the husband did not rest as against the mortgagee, the wife had no claim to dower at law, and her rights are the same as in the case just stated of a mortgage before marriage. If, therefore, the present controversy was between J. J. Wilkins and demandant, the argument in regard to her remedy and the form in which she must assert it, would well apply. The demandant, however, is only claiming against B. Wilkins and P. Henry, who are unconnected by any privity whatever, with J. J. Wilkins the mortgagee. They claim not under him, but under the mortgagor. They cannot be permitted to deny the seisin of Wooldridge, any more than the feoffee in Taylor's case cited above, could deny the seisin of his feoffer. This doctrine was recognised and asserted in the case of Whitehead *v.* Middleton, 2 How. Rep. 692.

The remainder of the lands in which dower is claimed, are all held by title derived from the husband of the demandant, and are, therefore, included in this decision, so far as the objection of want of seisin is concerned. The next inquiry of the court is in respect of the partnership lots claimed by James Perry and others. The question involved in this branch of the case was very fully and ably discussed in the case of Green *v.* Green, in the Supreme Court of Ohio, Ohio Rep. 244. William Green, the husband of the demandant in that case, had formed a partnership with the defendant, to erect and carry on a brass and iron foundry in Cincinnati; and the property was purchased as a site suitable for an establishment of that sort. The articles of partnership stipulated, among other things, that on the dissolution

of the partnership, the property of the concern should all be sold, and the proceeds applied to the payment of the debts. This property, and the building erected, were occupied *exclusively* for the purposes of the partnership, and were essential to the object of it. The question mainly presented for the consideration of the court was, whether William Green was *seised* of such an estate as entitled his wife to dower. The court regarded the agreement in the articles of partnership as creating an equitable lien in favor of all the members of the firm, which attached to the estate, at the moment of its acquisition, and that each partner, and all claiming the estate as heir or widow, must take it subject thereto. That a trust was thus created, which each partner had a right to enforce, so as to compel the application of the property to the purposes designated in the stipulation. They said it was the case of an agreement to turn land into money, and that the courts would regard it as such, and this was declared to be a universal rule by the Supreme Court of the United States in Craig *v.* Leslie, 3 Wheaton, 563. The object of such a stipulation, is to pledge the estate for the payment of the debts, so that it can never be converted to different purposes. Under such an agreement, the land is to be regarded as personalty, and distributable after death as such; and they denied the wife dower. This case turned entirely upon the stipulation in the partnership contract. It is that which was held to convert the land into stock. It was insisted in that case as it has been in this, that, independent of an agreement, there is a general lien by operation of law which the courts will enforce. We apprehend that it would be carrying the doctrine of resulting trusts much too far to apply it to a mere purchase by a partner, for purposes no way connected with the main object of the partnership, and not falling within the scope of the partnership agreement. This surely cannot be like the case of a purchase of lands by A, with the money of B, in which case, though A gets the deed to himself, the law will raise a trust for B. A is held a trustee in such case on very different principles.

The case of Thornton *v.* Dixon, 3 Bro. Ch. C. 199, establishes what we conceive to be the criterion in cases of this sort. That was a question between the real and personal representatives of a

[Wooldridge, Appellant, *v.* Wilkins *et al.*]

deceased partner; and it was held by Lord Thurlow, that as the articles of partnership did not provide that lands held by the partnership should be sold, or otherwise manifest an intention of considering it a part of the effects used in trade, the heir was entitled to it. The result of these cases we take to be, that lands purchased by partners under an agreement that they shall be sold for the benefit of the partnership, will be regarded as joint stock, and will be likewise so considered, though there be no agreement, if there be such an application or use of them to the purposes of the concern as evidences an original understanding of the parties that they are to be treated as such, and not as an estate in common. The case of Smith *v.* Smith, 5 Ves. 189, so much relied on by the defendants in the case before us, went, as we conceive, upon the principle of this distinction. The court there decreed dower to the widow, out of lands of a deceased partner. It is true the land was purchased in the name of the husband alone; and there was an agreement that he should be made debtor to the firm for the purchase money. The chancellor declared that if there had been no agreement, he would have considered the estate as partnership effects. It is this declaration as to the effect of the agreement, which is so much relied on by the defendants. But we are satisfied, upon looking into the facts of that case, that the remark of the chancellor must be understood subject to the principle before laid down. Robert Smith was a brewer, and had taken his brother, Charles Smith, into partnership, for the purpose of conducting that business. The property purchased was a brew house and premises, and some public houses necessary for the purposes of the trade, and used as such. So in the case of Featherstonhaugh *v.* Fenwick, 17 Ves. 278, the parties had been partners in the manufactory of glass, and the lease was of premises essential to the business of the firm, and had been used solely for that purpose. And besides, the taking of the lease in the name of one of the partners without notice to the rest of the firm, as was done in this case, after the expiration of the first lease, which was in the name of all the partners, was held to be a fraud upon the others, and he was, thereupon, held a trustee in equity for the other partners. Neither of these cases interferes with the rule before laid down;

for in both of them the property not only constituted the principal stock and capital in trade, but was essential to the business of the firm, and was used for that purpose and no other, and the purchaser, therefore, held a trustee for other partners.

The next and last question which we shall notice, is as to the method of assigning dower. The defendants offered to prove that improvements had been made since the sale by Wooldridge. This proof, we think, should have been received, or the sheriff have been directed to assign dower according to value, at the time of alienation. So far as regards an improvement in value by the labor or money of the alienee, there can be no doubt that the widow can not have the benefit of them. 2 Johns. Rep. 484; 3 Mass. Rep. 544; 3 Mason's Rep. 373; 5 Serg. & Rawle, 289; 11 Johns. Rep. 510; 13 *Ibid.* 179; 6 Johns. Chan. Rep. 258. The case must be, therefore, sent back, with instructions to the probate court to take proof of the value of any improvements made by the alienee, and to order dower of the lands claimed by the damandant according to such proof. In all other respects the decree of the court below must be affirmed.