May Term, 1829.

WILSON
v.
OATMAN.

*Per Curiam.*—The judgment is affirmed with costs.

*Dewey*, for the plaintiff.

*Kinney*, for the defendants.

---

## WILSON v. OATMAN.

After the alienation of real estate, and before the death of the grantor, the value of the estate was greatly enhanced by improvements made by the grantee. *Held*, that the dower of the grantor's widow should be assigned according to the value of the property at the time of the alienation.

A title-bond, conditioned for the conveyance of real estate on payment of the purchase-money, was executed, and possession at the same time given to the obligee. The purchase-money was afterwards paid, and a title obtained by the purchaser. *Held*, that the date of the bond must be considered the period of alienation, in estimating the value of the property with a view to the dower of the obligor's widow.

ERROR to the *Floyd* Circuit Court.

Wednesday, May 6.

BLACKFORD, J.—*George Oatman*, the husband of the defen-

May Term, dant in error, was seized in his life-time of 67 acres and a-half of
1829.    land, in *Floyd* county.   On the 18th of *March*, 1816, *Wilson*,

WILSON    the plaintiff in error, purchased this land from *Oatman*, receiv-
v.        ed a bond conditioned for a title to be made on payment of the
OATMAN.   purchase-money, and was put into possession of the premises.
The payment of the purchase-money was completed in *March*,
1819.   *Oatman* died in 1821, without having executed a deed
to *Wilson.*   In 1824, *Wilson* applied to the Probate Court, and
obtained the legal title for the land, according to his bond.   At
the date of the title-bond, to wit, in 1816, the only improve-
ments on the land were two small cabins, and about 6 acres
cleared and fenced.   But previously to *Oatman's* death, which
was in 1821, *Wilson* had cleared and improved 40 acres of the
land fit for cultivation; planted an orchard; and erected build-
ings worth 3,000 dollars.   In 1827, the widow of *Oatman*, who
is the defendant in error, brought the present suit to obtain her
dower; and commissioners were accordingly appointed, under
the statute, to assign and set it off to her.   In the appointment
of the commissioners, the Circuit Court directed them that, in
their assignment of the dower, they should take into conside-
ration the situation of the premises, at the time of the decease
of the husband.   The commissioners, upon an examination of
the premises, were of opinion, that no division of the property
could be made by metes and bounds.   They, therefore, assign-
ed the dower specially, agreeably to the statute, by allowing to
the dowress the one-third of the annual value of the premises,
to wit, 50 dollars, to be paid to her annually during her life.   In
fixing upon the amount of the dower, the commissioners were
governed by their estimate of the value of the property at the
time of *Oatman's* death, including the improvements made by
*Wilson*, the plaintiff in error, subsequently to the date of his title-
bond, and of his being put into possession.   The report was
objected to by *Wilson*, but was confirmed by the Circuit Court;
and there was judgment accordingly.

The only error assigned is, that the amount of the dower was
determined, by estimating the value of the land, with the im-
provements, at the time of the husband's death; whereas, it is
contended, it should have been determined, by an estimate of
the value at the date of the bond.   The law may be consider-
ed as settled, that in cases of alienation of the land by the hus-

band, the time when the husband alienated the estate, not that of his death, is the proper period at which to estimate the value of the property, with a view to dower. *Hale* v. *James*, 6 Johns. Ch. Rep. 258. In the case we are considering, the purchase was made, the title-bond given, and the possession delivered, on the 18th of *March*, 1816; though the deed was not executed, until it was directed to be executed agreeably to the contract, by an order of the Probate Court, in 1824, some years after the husband's death. Under these circumstances, we think, that the execution of the deed must relate back to the time of the original contract and possession; and that the date of that contract must be considered to be the period of alienation, in estimating the value of the property with a view to the dower of the defendant in error. If the improvements, made by the purchaser subsequently to his contract and possession, were to be taken into consideration in the estimate of dower, in cases like the present, the rule would tend to discourage the making of improvements, and would be contrary to the policy of the country (1). The judgment of the Circuit Court, therefore, confirming the report of the commissioners, together with so much of the order by which they were appointed, as directs them in their assignment of the dower, to take into consideration the situation of the premises at the time of the death of the husband, must be reversed; and the cause remanded for further proceedings.

*Per Curiam.*—The judgment is reversed, and the proceedings, &c. are set aside, with costs. Cause remanded, &c.

*Nelson*, for the plaintiff.

*Farnham*, for the defendant.

(1) Judge *Story*, in a case on this subject, speaking of C. J. *Tilghman's* opinion in *Thompson* v. *Morrow*, 5 S. & R. 289, says: "In his own language I can state, that 'with respect to dower, I have found no adjudged case in the Year Books, confining the widow to the value at the time of the alienation by her husband, where the question did not arise *on improvements made after the alienation;* and that having considered all the authorities which bear upon the question, I find myself at liberty to decide according to what appears to me to be the reason and the justice of the case, which is, *that the widow shall take no advantage of the improvements of any kind* made by the purchaser, but throwing those out of the estimate, she shall be endowed according to the value at the time her dower shall be assigned to her.' This doctrine appears to me to stand upon solid principles, and the general analogies of the law. If the land has, in the intermediate period, risen in value, she receives the benefit; if it has depreciated, she sustains the loss. Her title is consummate by her husband's

May Term,
1829.

death, and in the language of Lord *Coke*, that 'title is to the quantity of the land, viz. one just third part.' If, on the other hand, the value of the land has increased solely from the improvements made upon it, and without those improvements it would have remained of the same value as at the time of the alienation, the old value, and not the improved value, is to be taken into consideration. For practical purposes, it is impossible to make any distinction between the value of the improvements, and the value resulting from the improvements; between improvements, which operate on a part of the land, and those which operate upon the whole." *Powell* v. *The M. & B. M. Co.* 3 Mason, 347, 374.

Chancellor *Kent* says: "The better, and the more reasonable general American doctrine upon this subject, I apprehend to be, that the improved value of the land, from which the widow is to be excluded, in the assignment of her dower, even as against a purchaser, is that which has arisen from the actual labour and money of the owner, and not from that which has arisen from extrinsic or general causes." 4 Kent's Comm. 2 Ed. 68.

Land is mortgaged by the husband, who continues in possession and makes improvements. The equity of redemption is afterwards foreclosed or released. In estimating the wife's dower, the value of the improvements must be taken into consideration; the date of the foreclosure or release being deemed the period of alienation. 4 Kent's Comm. 2 Ed. 66.