# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Lᴇᴡɪs v. Aᴘᴘᴇʀsᴏɴ.

### March 9, 1905.

Absent, Whittle and Cardwell, JJ.

1. Dowᴇʀ—*Husband's Lands—Wife's Deed—Failure of Husband to Join—Receipt of Commuted Value—Estoppel.*—As the law stood in 1893, a deed from a commissioner, in which a married woman united for the purpose of conveying her contingent right of dower, but in which her husband did not unite, was not sufficient to convey her contingent right of dower, although the deed was signed and acknowledged by her and admitted to record as to her. And the fact that she received the commuted value of her contingent right of dower does not bar her from a claim against the purchaser, after the death of her husband, of the pecuniary value of her dower interest, where, as in this case, she has been guilty of no fraud, did not know of the sale of the land until after it was made, and the preponderance of evidence does not show that she received the money in lieu of her contingent right of dower, or, if she did, that she was advised with respect to her rights. The law favors dower, and will not, as a rule, bar it by anything short of the statutory requirements for that purpose. The doctrine of equitable estoppel does not generally apply to married women laboring under the common law disabilities as to their rights.

Appeal from a decree of the Circuit Court of Prince William county, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Jeffries & Hill* and *Grimsley & Miller*, for the appellant.

*R. Walton Moore* and *Barbour & Rixey*, for the appellee.

KEITH, P., delivered the opinion of the court.

The suit of *Partlow* v. *John H. Apperson* was instituted in the Circuit Court of Culpeper county to subject the lands of the defendant to the payment of liens amounting to the sum of $1,872, none of which were superior to the widow's right of dower. Under decrees entered in this cause, the land was offered for sale and purchased by H. W. Lewis at $12.00 per acre, amounting in the aggregate to $2,232. On the 14th of September, 1886, the commissioners reported this sale, which was duly confirmed, and by a subsequent decree a reference was made to one of the master commissioners "to take, state and report to the court an account of the present value of the contingent right of dower of Mrs. P. M. Apperson, wife of John H. Apperson, in the land sold in this cause, and in taking said account said John H. Apperson and wife shall have notice."

Mrs. Apperson, the wife of John H. Apperson, had been at that time married about 45 years. She was older than her husband. She was not a party to the original bill of *Partlow* v. *Apperson*. The preponderance of the evidence does not show that she knew of the sale of her husband's land until after it had been made, nor does it show that she had any notice of proceedings under the rule to commute her contingent right of dower. A highly respectable witness states that the subpoena was issued to her; that it was given to her husband to execute, and that he had seen it in the papers with service acknowledged in the handwriting of Mrs. Apperson. The paper itself has

disappeared, and Mrs. Apperson, on the other hand, testifies
that she never acknowledged service of the commissioner's
notice, and that she never was asked to do so.   It does not
appear by the preponderance of the evidence that there was an
effort to sell the land free from the claim of dower.   There is
the testimony of witnesses to that effect, but other witnesses
are positive that the auctioneer proclaimed more than once
that the land was sold subject to dower.   The purchaser swears
that he bought understanding that he was to get a complete
title; and that he paid $12 per acre for land for which he would
not have paid more than $6 an acre subject to dower rights.
He admits, however, that he knew that .Mrs. Apperson was
living, and had a contingent right of dower in this land.

It appears that the land sold for more than enough to pay all
the liens reported against it, together with the sum of $171.87,
which the commissioner ascertained to be the value of the con-
tingent right of dower.   The commissioner's report, showing
the disbursement of the fund in his hands, contains this item:
"By cash paid Mrs. P. M. Apperson, present value of her con-
tingent right of dower, she having united in deed to purchaser,
$174.87"; and at the foot of the report the commissioner of
sale makes this statement:   "In paying the present value of the
contingent right of dower of P. M. Apperson (the widow), your
commissioner only paid her the principal sum ascertained by
Commissioner Stallard's report ($171.87); as her husband is
still living he is entitled to the interest, and it was, therefore,
included in the amount of balance paid him, as will be seen
above."   The commissioner of sale states in his deposition, that
"I paid her the money, and took hers and her husband's joint
receipt for the two amounts paid them.   I drew the receipt and
both of them signed it in my presence."   Mrs. Apperson, how-
ever, says that, "as a matter of fact, Mr. Apperson received all
of the money, and I did not have the use of any of it"; and,

referring to the commissioner's deed in which she united, and which we will more particularly hereafter advert to, says: "If I had understood it I would not have signed it. I never employed any lawyer about this matter in my husband's lifetime, and never authorized my husband to do so, and never consulted any lawyer on the subject."

On the 30th of May, 1893, when her husband was still living, the commissioner of sale in the chancery cause of *Partlow* v. *Apperson*, executed a deed to the purchaser, in which Mrs. Apperson united, conveying this tract of land, and in it there appears this recital: "and whereas the said commissioner was directed to pay to P. M. Apperson, wife of J. H. Apperson, the commuted part of her contingent right of dower: Now this deed witnesseth, that for and in consideration of the premises and of the payment in full of the purchase money aforesaid by the said parties of the second part, the said commissioner as aforesaid doth give, grant, sell and convey with special warranty of title unto the said parties of the second part the aforementioned tract or parcel of land, and the said P. M. Apperson doth hereby relinquish and convey unto the said parties of the second part all right, title and interest she may have in said land in consideration of the commuted value thereof paid her by said commissioner." This deed was signed by the commissioner and P. M. Apperson, duly acknowledged before a commissioner in chancery on the 18th of September, 1893, and admitted to record on October 24th of the same year.

On the 16th of December, 1898, John H. Apperson died, and in June, 1901, Mrs. Apperson filed her bill claiming dower. The purchaser answered, denying her right, and from the record in the former suit of *Partlow* v. *Apperson*, which was exhibited with the bill, and the testimony of the witnesses, the facts appear that have already been related. The Circuit Court held that Mrs. Apperson was entitled to the relief asked for, and from that decree an appeal was allowed.

By section 2502 of the Code, in force at the date of this deed, it is provided, that "when a husband and his wife have signed a writing, purporting or contracting to convey any estate, real or personal, or any writing authorizing another to convey, or contract to convey any such estate, such writing may be admitted to record as to each of them according to the provisions of section twenty-five hundred or twenty-five hundred and one, and when it shall have been so admitted to record as to *the husband as well as the wife,* or if it be a writing executed under a power of attorney, when such writing as well as such power of attorney shall have been admitted to record it shall operate to convey from the wife her right of dower in the real estate embraced therein, and pass from her and her representatives all right, title, and interest of every nature which, at the date of such writing, she may have in any estate conveyed or embraced therein, as effectually as if she were, at the date, an unmarried woman. Such writing shall not operate any further upon the wife, or her representatives, by means of any covenant or warranty contained therein which is not made with reference to her separate estate as a source of credit, or which if it relate to her said right of dower or to any estate or interest conveyed other than her own, is not made with reference to her separate estate as a source of credit."

It is plain that the deed of the 30th of May, 1893, though signed, acknowledged, and admitted to record as to Mrs. Apperson, was not of itself effectual to bar her right of dower, her husband not being a party to it. It is claimed, however, that this deed together with the conduct of Mrs. Apperson in connection with the transaction under investigation, were such as to bar her claim.

In Vol. 14 of Cyc. of Law and Procedure, p. 931, it is said, that "as a general rule acts of the wife during coverture to operate as a bar of dower by way of estoppel must in effect

amount to one of the modes pointed out by the common law or recognized by statute as constituting a bar. It has been held, however, that acts and conduct sufficient to constitute an equitable estoppel will bar the right."

In *Martin* v. *Martin*, 22 Ala. at page 105, it is said: "Where the subject matter of litigation arises out of a contract either express or implied, it may be granted that a married woman may be estopped, like other parties, by acts or declarations upon which others have been induced to act, and against the truth of which it would work fraud and injustice for her to aver; but this doctrine can have no application to dower, which does not arise out of, nor is dependent upon, any contract. On the contrary, 'it is an estate which arises solely by operation of law, and not by force of any contract, express or implied, between the parties. It is the silent effect of the relation entered into by them; not as in itself incidental to the marriage relation, or as implied by the marriage contract, but merely as that contract calls into operation the positive institution of the municipal law.' Park on Dower, 5. It has for its object the sustenance of the widow and the nurture and education of her children, if she have any, and is favored in law. Indeed, such was the favor with which it was regarded by the ancient common law, that it grew into a maxim, 'that the law favoreth three things: Life; liberty; and dower.' Dower being an institution of positive law, can only be defeated or barred by some of the modes pointed out by the law." In support of the law as thus stated there are cited Cro. Jac. 111; 9 Co. 170.

In *Rannells* v. *Gerner*, 80 Mo. 474, it is said, that the legislature has provided but one mode whereby a married woman may relinquish her dower in the real estate of her husband, and that is by their joint deed, acknowledged and certified; and with reference to the doctrine of estoppel as applied to such cases, the court says: "Respecting the equitable subject

matter of defendant's answer, it is the established law of this State that estoppels *in pais* are not applicable to *femmes covert* except where regarded as *femmes sole*, in consequence of possessing separate estates." In support of this a large number of authorities are cited, and the court then observes, that "Isolated cases may, perhaps, be found supporting the views advanced by defendant's counsel, but they are opposed by the authorities heretofore cited, and, indeed, by the great current of authority."

In *Grim's Appeal*, 105 Pa. St. 375, the court said, speaking upon this subject: "If the heirs had been *sui juris*, they would under these circumstances certainly be precluded now from asserting a right inconsistent with the course which by their encouragement they induced the executor to pursue. It is objected, however, that certain of the heirs are married women, and as it does not appear that they were joined by their husbands in these acts of approval and encouragement, they are protected by their coverture. It is certainly true, as shown in a long line of cases, that a contract, void under the disability of coverture, cannot be made good by estoppel; neither a fraudulent denial of coverture, payment of purchase money, nor silent acquiescence in the making of improvements, nor all of these together, can, by way of estoppel, give validity to a contract void upon this ground."

In Herman on Estoppel, at sec. 581, the law is thus stated: "In order to give rise to an estoppel by deed the parties must ordinarily be *sui juris*, competent to make it effectual as a contract, and the instrument so executed as to be binding in law. The deed of a married woman will not operate as an estoppel where it fails as a grant, or estop her from setting up an estate obtained subsequently or by purchase, against the grantee. This, like the grant, is limited to the estate the wife has at the time, and does not extend to an interest acquired after the

execution of the deed, for she can not bind herself subsequently by any covenant. Where the deed of a married woman fails as a conveyance from the non-concurrence of her husband, it is ineffectual for all purposes, and can not be relied upon as an estoppel or ground of recovery in a subsequent controversy. By common law the warranty deed of a married woman, though executed in such form as to convey her title, did not operate against her by way of covenant or estoppel, because she was incapable of binding herself by covenants of warranty or by agreement to convey her real estate."

In some of the States, as appears from the author just cited, these restrictions are substantially abolished by statute; so that a mortgage deed given by a married women with her husband's consent, with covenants of warranty, will enure, by way of estoppel, against her, in cases of title subsequently acquired. But with us there is no such statute. On the contrary, it is expressly provided, that even where the husband is a party to the deed in which the wife unites, it shall not operate any further upon her or her representatives "by means of any covenant or warranty contained therein which is not made with reference to her separate estate as a source of credit, or which, if it relate to her said right of dower or to any estate or interest conveyed other than her own, is not made with reference to her separate estate as a source of credit." And here it may be well to remark, that the contingent dower interest of the wife was not, at the time Mrs. Apperson united in the deed with the commissioner, a part of the separate estate of a married woman.

In *Lowell* v. *Daniels*, 2 Gray, 161, the court, speaking upon this subject, says: "The material question at issue between the parties is, whether a married woman and her heirs may be barred of her estate by an estoppel *in pais*. She can make no valid contract in relation to her estate. Her separate deed of it is absolutely void. Any covenants in such separate deed

would be likewise void. If she were to covenant that she was *sole,* was seized in her own right, and had full power to convey, such covenants would avail the grantee nothing. She could neither be sued upon them nor estopped by them. The law has rendered her incapable of such contract, and she finds in her incapacity her protection; her safety in her weakness. Her most solemn acts, done in good faith and for full consideration, cannot affect her interest in the estate, or that of the husband and children. . . . We think a married woman cannot do indirectly what she cannot do directly; cannot do by acts *in pais* what she cannot do by deed; cannot do wrongfully what she cannot do rightfully. She cannot by her own act enlarge her legal capacity to convey an estate. This doctrine of estoppel *in pais* would seem to be stated broadly enough, when it is said that such estoppel is as effectual as the deed of the party. To say that one may, by acts in the country, by admission, by concealment, or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law has imposed upon the capacity of infants or married women to alienate their estates."

In *Drury* v. *Foster,* 2 Wallace, 24, 17 L. Ed. 780, Mr. Justice Nelson said: "It is conceded in this case, that the instrument of Mrs. Foster, signed and acknowledged, was not a deed or mortgage; that on the contrary it was a blank paper; and that in order to make it available as a deed or mortgage, it must be taken to have been signed and acknowledged with the design to have the blanks filled by the husband, or some other person, before the delivery. We agree—if she was competent to convey her real estate by signing and acknowledging the deed in blank and delivering the same to an agent, with an express or implied authority to fill up the blank and perfect the conveyance—that its validity could not well be controverted. Although it was at one time doubted whether a parol authority was adequate to

authorize an alteration or addition to a sealed instrument, the better opinion, at this day, is that the power is sufficient. But there are two insuperable objections to this view in the present case. First, Mrs. Foster was disabled in law from delegating a person, either in writing or by parol, to fill up the blanks and deliver the mortgage; and, second, there could be no acknowledgment of the deed within the requisitions of the statute until the blanks were filled, and the instrument complete. Till then there was no deed to be acknowledged. The act of the *femme covert* and of the officers were nullities, and the form of acknowledgement annexed as much waste paper as the blank mortgage itself, at the time of signing. It is insisted, however, that Mrs. Foster should' be estopped from denying that she had signed and acknowledged the mortgage. The answer to this is that to permit an estoppel to operate against her would be a virtual repeal of the statute that extends to her this protection, and also a denial of the disability of the common law that forbids the conveyance of her real estate by procuration. It would introduce into the law an entirely new system of conveyances of the real property of *femmes covert.* Instead of the transaction being a real one in conformity with established law, conveyances by signing and acknowledging blank sheets of paper would be the only formalities requisite. The consequences of such a system are apparent, and need not be stated."

There are authorities which, conceding that a married woman cannot be estopped by her contract, hold that she may be estopped by a fraudulent act. It is needless to discuss this distinction. It will be time enough to undertake to define its extent when a case arises which renders it necessary. Mrs. Apperson was in this case guilty of no fraud, in relying upon which the appellant could have been misled to his prejudice. She has established a *prima facie* right to the relief sought by her, and the burden was upon those who sought to defeat it

to establish all the elements of an estoppel, assuming that such a defense would have been effectual. The preponderance of the evidence does not show that Mrs. Apperson, by word or deed, induced or encouraged Lewis in the purchase of this property. It does not show that she even had knowledge of his being the purchaser until after the sale was made to him. It is not shown by a preponderance of the evidence that she received the money in lieu of her contingent right of dower; or, if she did, that she was advised with respect to her rights.

We are of opinion that the deed of the commissioner, in which Mrs. Apperson united, did not convey her dower; that she is not estopped by her conduct from asserting her right; that under the circumstances disclosed in this record we cannot burden that right with the money which she is alleged to have received during her coverture, in lieu of her contingent right of dower; and that, upon the whole case, the decree of the Circuit Court should be affirmed.

*Affirmed.*