(No. 18977.— )

ORA GRIDLEY *vs.* JOHN H. WOOD *et al.*—(GUSTAVUS A. BLESCH, Exr., Appellee, *vs.* THE AMERICAN STATE BANK *et al.* Appellants.)

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

SIGMUND LIVINGSTON, (LEDERER, LIVINGSTON, KAHN & ADLER, SHERMAN C. SPITZER, and NORBERT B. TYRRELL, of counsel,) for appellants.

A. E. & R. C. DEMANGE, (R. C. DEMANGE, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

In the circuit court of McLean county, at its February term, 1928, there was awarded to Ora Gridley, as dower in certain real estate in the city of Bloomington, one-third of the net rents, issues and profits thereof during her life and one dollar damages for failure and refusal to assign

her dower. This appeal was taken from such decree by the American State Bank, the Corn Belt Bank and Paul F. Beich, the beneficial owners of the fee. Since this appeal was taken Ora Gridley has died, and Gustavus A. Blesch, executor, has been substituted as appellee.

On October 18, 1902, Ora Gridley secured a divorce from Edward B. Gridley and was awarded alimony in the sum of $1800 a year from September 1, 1902. By the decree the alimony was made a lien on the lots involved in this proceeding and on other described real estate owned by Gridley until he should give a mortgage or bond sufficient to secure its payment. It was further provided that in case of Gridley's death the decree for alimony should be binding upon his heirs, executors and administrators until the complainant's dower should be assigned to her in the estate owned by Gridley on the date the bill for divorce was filed. The decree also provided that after Gridley's death such alimony should be $900 per year until dower was assigned. On March 6, 1909, Gridley conveyed the lots in question to John H. Wood, subject to Gridley's divorced wife's dower right and lien for alimony, reserving a life estate to the grantor. Gridley died on January 7, 1914. During his lifetime he had paid all the alimony installments which had become due and after his death Wood paid them until March 31, 1916. On March 29, 1918, Mrs. Gridley filed her petition for dower and alimony, alleging that dower had not been assigned to her and that alimony to the extent of $675 due under the former decree was then unpaid. Wood answered the bill, admitting that the complainant was entitled to dower, averring that he had always been ready and willing to assign dower to her and proposing that the real estate be appraised and the value of her dower thus ascertained. His answer further set up that no agreement had been reached between the complainant and the defendant; that one building was upon the premises and that the property was not susceptible of division; that on December 1,

1909, when he secured title to the property from Gridley, the improvements upon it were in such poor state of repair that the premises could not be rented to advantage; that in order to make them profitable and income-bearing he expended $8000 in making improvements; that since making the improvements the property had been rented and in the assignment of dower the defendant is entitled to credit for the money expended in improvements; that dower could only be assigned in the property and improvements as they existed at the time of Gridley's death and not according to the subsequently increased value of the property due to the $8000 improvements placed upon it; that the defendant was entitled to profit by the increase in value to the extent of the money expended by him for such improvements.

The record shows that no action was taken in the cause for nearly six years, until February 26, 1924, when the complainant suggested the death of Wood and amended her bill, making his widow, Carrie E. Wood, a party defendant, individually and as executrix. She also then struck out of her bill the allegation that she was entitled to have her lien for alimony enforced and the corresponding prayer for a decree for alimony due. Subsequently a supplemental bill was filed by the complainant, reciting the previous proceedings in the case and alleging that after the filing of the original petition Wood executed a deed of trust of the property to John Stapleton, trustee, to secure $10,500, and that his successor in trust filed a bill to foreclose the same; that the petitioner had answered the bill, setting up her claim for dower and her lien for alimony, and the bill was then dismissed as to her; that a decree of foreclosure was entered in 1924, pursuant to which the property was sold and a certificate of purchase issued to Elizabeth Keiser and there was no redemption from the sale; that all the right, title and interest of the estate of John H. Wood, Carrie E. Wood as executrix or as legatee, widow or heir of Wood, and his judgment creditors, if any, were extinguished by their

failure to redeem from the sale, and that all the rights of the trustee under the deed of trust and the holders of the indebtedness were extinguished by the lapse of the period of redemption, and there were no other defendants in the case who had any right or interest in the premises. On December 11, 1925, on motion of the complainant previously made, it was ordered that the suit be dismissed against the defendant Stapleton, as trustee, the Peoples Bank of Bloomington, conservator, and Carrie E. Wood, executrix, they appearing to have no further interest in the subject matter, and the cause was thereupon referred to the master in chancery. A number of motions were made to dismiss, to reinstate and to strike the cause during the November term, 1925, and the February term, 1926, a recital of which would only serve to confuse. Suffice it to say that as a result of these proceedings the appellants were first brought into this case. They entered their appearance and answered the bill, as they were then the only parties interested in the fee, which they owned subject to the complainant's right of dower and lien for alimony.

On February 25, 1928, the master in chancery presented his report, finding that improvements were made on the premises after the death of Gridley which increased the value to the extent of $10,000 and the yearly rental value to an amount equal to ten per cent gross of the amount of the improvements, or $1000 per year gross or $600 a year net; that the improvements were principally made after the petitioner's dower became assignable, and that she was entitled to have her dower assigned in the premises in one-third of the net rents and profits without reduction because of the improvements; that the premises were indivisible, making it necessary to assign dower from the rents and profits, and the defendant was entitled to have dower assigned in one-third of the net rents and profits from the date of the decree; that the complainant was also entitled to $900 alimony after the death of Gridley by virtue of the

decree of divorce previously entered, which had been made a lien upon the premises until dower was assigned to the complainant. The master further found that the total net rentals received, after deduction for all expenses, was $22,-278.16; that while the award of one-third of the net rents was the customary way of determining damages where dower was not assigned, the purpose of the statute was to award actual damage, taking into account the condition of the property and the rights of the parties; that since the complainant was entitled to $900 a year by way of alimony until her dower was assigned, which was made a lien upon the premises in question, which, with accrued interest, totaled the sum of $8952.30 up to and including September 30, 1925, and since that amount was more than the complainant would have received had dower been assigned out of the rents and profits at the time of the demand, the complainant had been benefited and not damaged by the failure to assign dower and therefore no damages for the failure to assign dower should be awarded to her. The decree in the main sustained the report and recommendations of the master. It ordered the assignment of dower to the complainant, holding that from the date of entering the decree, during her lifetime, she should be entitled to receive one-third of the rents, issues and profits as they accrued, as tenant in common with the owners, and assessed damages for failure and refusal to assign her dower at the nominal sum of one dollar. From this decree the present appeal was taken.

It is first contended that the petitioner was guilty of *laches* in prosecuting her claim for dower. This contention is without merit. Her right to dower was consummated when her husband died, January 7, 1914. Her petition was filed on March 29, 1918, and at that time the Statute of Limitations had not run against her. After the right was asserted by the filing of her petition no subsequent *laches* could bar the right, where there had been no act done or

change of relations or conditions making its enforcement inequitable. *Gibbons* v. *Hoag*, 95 Ill. 45; *Lynn* v. *Worthington*, 266 id. 414; *Totten* v. *Totten*, 294 id. 70.

The chief assignment of error relied upon by the appellants is that the trial court erred in assigning dower in one-third of the rents without deducting the increase in rental value resulting from the improvements made by John H. Wood and his successors in title. We believe the position of the appellants in this regard is well taken. A different rule applies generally with respect to the widow's right to dower where improvements have been made by the heirs or devisees of her deceased husband, as distinguished from a case where such improvements have been made by a stranger who purchased the property from the deceased husband. The rule seems to be well settled both in England and in the United States, except where changed by statute, that if the heirs, after the husband's death, enhance the value of the estate the widow will be entitled to her dower in such estate without allowance to the heirs for the value of such improvement. (19 Corpus Juris, 367, and cases cited in foot-note; 1 Tiffany on Real Prop. sec. 233, p. 813; 2 Scribner on Dower, chap. 21, sec. 30.) Where, as in the case at bar, the improvements were all made by the husband's grantee after his death, the English and American authorities are not in accord. In England it seems to be settled that the same rule as applies as between the widow and the heir should apply as between the widow and alienee, the widow there taking according to the value of the estate at the death of her husband, including accretions in value due to improvements. (*Doe* v. *Gwinell*, 1 Q. B. 682, 113 Eng. Rep. re-print 1292; 19 Corpus Juris, 368.) There is an apparent conflict among the earlier English authorities on this subject. The rule now generally established by a decided weight of authority in the United States is that the widow's dower must be admeasured or assigned according to the value of the rents exclusive of such improvements.

19 Corpus Juris, 368; *Powell* v. *Monson,* 3 Mason, 347; 1 Washburn on Real Prop.—5th ed.—pp. 298-300; *Gore* v. *Brazier,* 3 Mass. 544; *Stearns* v. *Swift,* 8 Pick. 532; *Dunseth* v. *Bank,* 6 Ohio, 76; *Hobbs* v. *Harvey,* 16 Me. 80; *Mosher* v. *Mosher,* 15 id. 371; *Rannels* v. *University,* 96 Mo. 226, 9 S. W. 569; *Alleman* v. *Hawley,* 117 Ind. 532, 20 N. E. 441; *Davis* v. *Hutton,* 127 Ind. 481, 26 N. E. 187.

In Illinois the rule just announced was stated as a rule of public policy by one of the early decisions of this court—*Summers* v. *Babb,* 13 Ill. 483. It was there held: "By the common law, in the case of an alienation by the husband the widow takes her dower according to the value of the land at the time of the alienation and not according to its subsequent increased or improved value. (4 Kent's Com. 65.) The rule is well established in this country that she is not dowable of improvements put upon the land subsequent to the alienation by the husband. The rule is founded in reasons of public policy. It tends to encourage the making of improvements and to advance the growth and settlement of the country. It works no injustice to the dowress. She has no just claim to the enhanced value of the land caused by the labor and expenditure of the purchaser. A sale of the land on execution against the husband is equivalent to an alienation by him. There is no reason for making any distinction between the two classes of purchasers. In either case the purchaser acquires the entire interest of the husband. Our statute does not define dower. It provides for the assignment but leaves the interest to be determined at common law. The authorities all agree that in the assignment of dower the widow is not to be permitted to participate in the value of improvements made after the estate passed out of the husband.—*Thompson* v. *Morrow,* 5 Serg. & Rawle, 289; *Walker* v. *Schuyler,* 10 Wend. 481; *Catlin* v. *Ware,* 9 Mass. 218; *Tod* v. *Baylor,* 4 Leigh, 498; *Lawson* v. *Merton,* 6 Dana, 471; *Barney* v. *Frowner,* 9 Ala. 901; *Russell* v. *Gee,* 2 Mills, (S. C. R.)

254; *Allen* v. *McCoy,* 8 Ohio, 418; *Wooldridge* v. *Wilkins,* 3 How. Miss. R. 360; *McClanahan* v. *Porter,* 10 Mo. 746; *Wilson* v. *Oatman,* 2 Blackf. 223; *Lewis* v. *James,* 8 Humph. 537; *Green* v. *Tenant,* 2 Harrington, 336." In later cases before this court, where land was sold by the husband and increased in value by the improvements placed upon it by the purchaser, our holdings have been uniformly the same. *Gove* v. *Cather,* 23 Ill. 585; *Scammon* v. *Campbell,* 75 id. 223; *Stookey* v. *Stookey,* 89 id. 40; *Onstott* v. *Edel,* 232 id. 201.

The appellee asserts, however, that in none of the Illinois cases above mentioned does it appear that the improvements were made after the husband's death, as in the case at bar, and therefore argues they are inapplicable. A careful reading of these five decisions fails to disclose whether the improvements were all or in part placed upon the lands by the grantees before or after the husband's death. In none of these cases does it definitely appear that the improvements were all made before the husband's death. Nor is the rule announced in any of them limited to improvements made prior to the husband's death. Two of the cases cited in support of the opinion in the *Babb case* are *Allen* v. *McCoy, supra,* and *Green* v. *Tenant, supra,* in both of which it is clear that the improvements were made subsequent to the death of the husband. This obviously shows that the court then had in mind not only improvements made in the lifetime of the alienor but also improvements made after his death, as no distinction was made and a common rule was applied to both situations. This intention affirmatively appears in the case of *Powell* v. *Monson, supra,* therein cited, where Judge Story, in commenting that the rule respecting the widow's dower in improvements made by the heir after the husband's death is different as to purchasers, against whose improvements the widow has no claim, says, page 370: "I do not find that in respect to purchasers any distinction is admitted whether the improvements are made with or

without notice of the right of dower or before or after the husband's death. * * * Be this as it may, it is now admitted to constitute a fixed maxim of the common law, and in all American cases in which it has been brought into controversy its obligatory force has been fully established."

The appellee further seeks to minimize the effect of the holding in *Allen* v. *McCoy, supra,* because of the early conditions (1838) and exceptional circumstances then involved, but we can see no reason for such distinction, especially since the rule there applied was then and is now almost universally adopted by the courts of this country. In that case Allen owned a large tract of wild land in Ohio. In 1805 he mortgaged the tract, his wife not joining. He died in 1806. In 1809 the mortgage was foreclosed and the land sold. In 1811 the tract was subdivided and about one-half of the town site of what is now the city of Columbus was located thereon. Allen's widow filed her petition many years afterwards for the assignment of dower in the highly improved land. It was allowed only in the unimproved value of the land and not allowed in respect to improvements made subsequent to the death of the husband. In *Green* v. *Tenant, supra,* the land was sold, after the husband's death, under a judgment previously rendered against the husband. The widow demanded dower. The purchaser had improved the property after the husband's death. The court there held that the widow did not take dower in the improvements made by the alienee, citing the case of *Powell* v. *Monson, supra,* and adopting the same language there used by Judge Story. The same rule was enunciated by the Supreme Court of New Jersey in *VanDorn* v. *VanDorn,* 3 N. J. L. 270, decided in 1810, where it clearly appears that the husband's alienee had improved the premises before and after the husband's death and where the issue as to dower in improvements made after the husband's death was distinctly presented to the court. There the court was "unanimously of the opinion that the widow could recover no more than the

value of the third part of the land at the time of alienation."
In *Gore* v. *Brazier, supra,* later cited by Judge Story in
*Powell* v. *Monson, supra,* the Massachusetts court said that
the rule denying the widow dower in the alienee's improve-
ments had become a rule of public policy in that State.
Likewise in the New York case of *Evertson* v. *Tappen,*
5 Johns. Ch. 497, where the husband had died and the
widow's dower had become consummate prior to 1806, when
the New York statute expressing the same rule as stated in
the opinion was enacted, the court said: "And the value
of the dower is to be computed according to the value of
the property at the death of the husband and not according
to its increased value afterwards by reason of beneficial im-
provements made thereon." Of like import was *Campbell*
v. *Murphy,* 55 N. C. 357, where the land was improved
by a purchaser after the husband's death, the court there
holding that the widow was not entitled to dower in the
improvements.

It is true that the precise question involved has never
been distinctly passed upon by this court, yet no case has
been cited, nor have we been able to find one, where any
court in this country ever gave to the widow the benefit of
improvements made by the husband's alienee after the hus-
band's death. On the other hand, the cases reviewed where
the same question has been raised are authority for the doc-
trine generally accepted in this country that the widow is
not dowable of improvements put upon the land subse-
quent to the alienation by the husband. This view is not
in conflict with the five previous decisions of this court
above cited. The reasoning in *Summers* v. *Babb, supra,*
applies with equal or greater force to-day, under the facts
here presented. No injustice can come to the appellee by
denying Mrs. Gridley a share in the value of the improve-
ments placed upon the property after her husband's death.
Even aside from the alimony allowed to her, (*Gridley* v.
*Wood,* 305 Ill. 376,) she was entitled to an assignment of

dower in the real estate, based upon its value at the time of her husband's death and exclusive of any improvements made thereafter to which she did not contribute.

The decree of the circuit court of McLean county assessing nominal damages for failure to assign dower at one dollar is sustained, but the decree awarding the complainant dower during her lifetime in one-third of the net rents, issues and profits as they accrued, based upon the total value of the property with improvements made after her husband's death, is reversed and the cause is remanded to the circuit court, with directions to amend the decree as of March 20, 1928, so that dower may be awarded to the complainant in an amount equal to one-third of the net rentals and income after deducting that part of the net rentals and income accruing by reason of the improvements made by the alienee and his successors in title.

*Reversed in part and remanded, with directions.*