Doris Kay **DEVERS**, Appellant,

v.

**CHATEAU CORPORATION** and **C.F. Prospect, Inc.** co-partners d/b/a Prospect House Associates; Prospect House Unit Homeowners Association; John Does one (1) through three hundred (300); Lots numbered one (1) to sixty-two (62), (except Lots 34 and ½ of 35) inclusive, in block number eight (8) Radnor Heights Subdivision, as the same appears duly dedicated, platted and recorded among the land records of Arlington County, Virginia, in deed book 110 at page 576, Theodore A. & Jeanie M. Adams & Unified Industries, Appellees,

v.

**John DALONAS,** Appellee.

No. 83–2102.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1984.

Decided Nov. 20, 1984.

suasion remains on the Secretary to the extent provided for in the statute.

Donald G. Ferrell, Alexandria, Va. (Patricia A. Smith, Norfolk, Va., Jeffrey D. Billett, Burke, Va., Gwendolyn S. Whipp, Ferrell & Associates, Alexandria, Va., on brief), for appellant.

David G. Fiske, Alexandria, Va. (John P. Corrado, Ronald L. Lord, Thomas & Fiske, Alexandria, Va., on brief) and J. Kathleen O'Shea Poux, McLean, Va. (R. Harrison Pledger, Jr., McLean, Va., on brief) and Peter K. Stackhouse, Arlington, Va. (Tolbert, Smith, Fitzgerald & Ramsey, Arlington, Va., on brief), for appellees.

Before WIDENER, HALL and MURNAGHAN, Circuit Judges.

WIDENER, Circuit Judge:

Doris Kay Devers brought this diversity action against the Chateau Corporation, and individual owners of apartments built on the land, for assignment of her dower in real property owned by her husband during their marriage, and conveyed by him without plaintiff's uniting in the deed. The district court held that plaintiff's action was in equity and barred by the doctrine of laches. The court denied plaintiff's motion for summary judgment and granted summary judgment for the defendants, from which plaintiff appeals. We reverse in part, vacate in part, and remand with instructions.

I

The plaintiff, Doris Kay Devers, was married to Malcolm B. Devers on November 1, 1963 in the State of Florida. She remained his wife until his death in July 1974. At the time of their marriage, Malcolm Devers held fee simple title to certain real property following a property settlement resulting from an earlier marriage. It is this property, known as the Radnor Heights property, located in Arlington County, Virginia, which is the source of controversy in this action.

In October 1962, Malcolm Devers, for rent of $5000 per month, leased the entire Radnor Heights property for 99 years to Congressional Apartments, Inc., which later assigned the lease to Lawrence Brandt and Donald Brown, trustees for Prospect House Joint Venture. Brandt and Brown then erected an apartment building on the property. Both land and building were to revert to Malcolm Devers at the end of the lease.

On March 10, 1971, Malcolm Devers conveyed the Radnor Heights property to Devers Properties, Inc., a Virginia corporation in which he was sole stockholder. The deed falsely described Malcolm Devers as "divorced." At the time of the conveyance, Malcolm and Doris Devers were in fact married. At the time of that conveyance, Doris Devers knew nothing of that transfer of the Radnor Heights property.

In April 1972, Devers Properties conveyed the Radnor Heights property to the lessees, Brandt and Brown, for $705,000, canceling the 99 year lease. The general warranty deed signed by Devers as president of the corporation, in which Devers joined individually to convey by quit claim deed, described him as "divorced and not

remarried;" Doris Devers was again not a party to the conveyance, and was not made aware of it.

Throughout her marriage to Malcolm Devers, Doris Devers was a resident of Miami, Florida, where she operated a small motel purchased by her in 1963. From depositions presented to the district court, it is apparent that during the marriage Devers devoted considerable time to traveling on business outside the State of Florida, primarily to Northern Virginia. Devers' business interests included, among others, a manufacturing facility for garden supplies, an investment firm in South America, and grain sales to the Soviet Union. These financial dealings were in addition to Devers' ownership of the Radnor Heights property.

It appears that few of Malcolm Devers' business ventures proved successful. Indeed, Doris Devers and other relatives were often called upon to pay the bills and losses incurred by him. Evidence presented to the district court showed that Doris Devers was among those left in the dark concerning her husband's finances. While she was generally aware of Malcolm Devers' enterprises, including the Radnor Heights property, her direct participation occurred only when his debts needed to be paid. They never had a joint banking account and had never filed joint tax returns.

Malcolm Devers died on July 27, 1974, in Arlington, Virginia, married to Doris Devers. At the funeral held in Northern Virginia, Doris Devers made inquiries as to her husband's financial condition. She was told by Claude Vess, her husband's and her own accountant, that Malcolm Devers had died leaving no property and in debt. When asked about the Radnor Heights property, Vess told Mrs. Devers that the property previously had been sold, possibly "a couple of years ago." Vess also testified that Malcolm Devers had told him not to disclose the sale to anybody.

Among those attending the funeral was Malcolm Devers' attorney, John Dalonas.

Mrs. Devers had known John Dalonas for a number of years. She had on occasion paid legal fees for her husband to Mr. Dalonas. At no time on that occasion did Mr. Dalonas speak to Doris Devers concerning Devers Properties, Inc. or the deeds conveying the Radnor Heights property. Following the funeral, Doris Devers immediately returned to operating her motel in Florida, obviously accepting the statements of Mr. Vess that her husband had failed to leave an estate.

On January 21, 1980, Brandt and Brown conveyed the Radnor Heights property to Chateau Corporation and C.F. Prospect, Inc., d/b/a Prospect House Associates, a Virginia general partnership. Subsequent to this transaction, the apartment building was converted to condominium ownership.

In the spring of 1983, Doris Devers employed an attorney in Alexandria, Virginia to handle a matter involving other property in Northern Virginia. At that time, Mrs. Devers asked the attorney to discover what had happened to the Radnor Heights property. As a result of the attorney's inquiries, Doris Devers brought this action to recover her dower interest in the Radnor Heights property.

Upon hearing motions for summary judgment, the district court held that the plaintiff's action for dower was equitable in nature and as such was subject to the doctrine of laches. The court found that the plaintiff should have been aware of her right to dower at the time of Malcolm Devers' death and that she had failed to diligently pursue that right. The court determined that to permit the action nine years later would be prejudicial to the defendants. As a result, the court held that laches barred plaintiff's action, and granted summary judgment for the defendants.

On appeal, the plaintiff argues that the Virginia 15-year statute of limitations for the right to recover an interest in land, rather than the doctrine of laches, should govern the bringing of this action. We agree.[1]

---

1. The claim of defendants that if laches does not apply, Va.Code § 8.01–248, a one-year catch all provision, does apply, is without merit.

## II

■ The principal question presented is whether Virginia's 15-year statute of limitations to recover land applies to an action to assign dower.[2] Virginia law indicates that Doris Devers' right to have dower assigned arose upon the death of her husband. *Wilson v. Wilson,* 195 Va. 1060, 81 S.E.2d 605 (1954); *Turner v. Turner,* 185 Va. 505, 39 S.E.2d 299 (1946). Malcolm Devers died in July 1974. This suit was instituted in June 1983, some nine years later. If the 15-year statute of limitations does govern this action, then the plaintiff has satisfied the time requirements for bringing an action to assign dower.

The statute of limitations which is at issue here is Va.Code § 8.01–236, which reads in pertinent part:

No person shall make an entry, or bring an action to recover, any land unless within fifteen years next after the time of which the right to make such entry or bring such action shall have first accrued to such person or to some other person or to some other person through whom he claims.

While this statute of limitations has long been applied to controversies involving the adverse possession of land, the Supreme Court of Virginia has never been directly presented with the question of whether the statute applies to a widow's action to assign dower.

In Virginia, courts faced with controversies involving real property have long relied on the authoritative statements of law provided by Professor Minor in his exhaustive treatise, *Minor on Real Property,* the current edition of which is Ribble, 2nd ed. 1928, which we cite from time to time. Absent a holding of the Virginia court, we look first to that authority.

That treatise discusses the issue before us on more than one occasion, and concludes in each instance that the statute of limitations does govern claims for dower. In reaching this conclusion, *Minor* points to the Virginia statutory provision for remedies in recovering dower, now Va.Code § 64.1–37, as amended, which states:

A widow having a right to dower in any real estate may recover such dower and damages for its being withheld by such remedy at law as would lie on behalf of a tenant for life having a right of entry, or by a bill in equity, when the case is such that a bill would now lie for such dower.

*Minor* notes that at common law, an *"action of ejectment* did not lie for dower [before assignment] because the widow before assignment of dower had no right of entry, which was essential to that action." (Italics are in the text) The remedy rather was by writ of dower *unde nihil habet* and the writ of right of dower. *Minor,* supra, § 330. The Virginia statute, § 64.1–37, however, permits an action of ejectment to recover dower since the right of entry is granted, and the Virginia Code provisions on "Ejectment" specifically recognize in § 8.01–157 the prosecution of that action at law for dower not yet assigned. *Minor* recognized that the 15-year statute of limitations applied to actions of ejectment, and concluded that:

In Virginia, since the widow is permitted by statute *to sue in ejectment* to recover dower not yet assigned, the same statutory period of limitation applies to that action as when it is instituted by any other claimant of real estate. *Minor,* § 316, 330. (Italics are in the text)

In determining whether the Virginia statute applies to dower actions, we also look

---

**2.** Dower in Virginia is described in Va.Code § 64.1–19, which stated in pertinent part in 1974:

A surviving spouse shall be entitled to a dower or curtesy interest of one-third of all the real estate whereof the deceased spouse or any other to his use was at any time seized during coverture of an estate of inheritance,

unless such right shall have been lawfully barred or relinquished.

In 1977, § 64.1–19 was amended to make dower a fee simple rather than a life interest. Va. Acts of Assembly, 1977, c. 657.

As *Minor,* infra, sets out in §§ 950 and 977 of the text, statutes of limitation with respect to land result in acquisition of title rather than merely a bar to an action by the ousted owner.

to *Minor's* consideration of the dower right of a widow in land where adverse possession occurred against the husband during the marriage. That text declares that even where adverse possession has run successfully against the husband, the wife's inchoate right to dower survives, vesting upon the husband's death. It concludes that the statute of limitations applies and does not begin to run until the husband's death. *Minor*, §§ 312, 977.

The conclusions arrived at in *Minor* were foreshadowed by the Supreme Court of Virginia in *Hulvey v. Hulvey*, 92 Va. 182, 23 S.E. 233 (1895). In *Hulvey*, the defendant's husband died intestate, leaving a parcel of land. The defendant somewhat later acquired a special warranty deed to the land, under it claimed color of title, and attempted to hold the land in adverse possession against heirs of the decedent from an earlier marriage. After 17 years, the heirs brought suit to force the assignment of dower, with the remainder of the land to be partitioned among the heirs.

The widow argued she had successfully taken the entire parcel of land by adverse possession, and that the 15-year statute of limitations barred the plaintiffs' action. In the process of determining that the widow's possession was in privy to the heirs, and therefore subject to a higher standard of proof in establishing adverse possession, the Virginia Supreme Court held that dower was "an interest in land" for which an action of ejectment could be maintained, and thus the widow's initial possession of the land was consistent with the interest of the heirs and not adverse to it. The court found that the widow had not publicized her adverse possession under the special warranty deed to the necessary degree until at most five or six years before the action to assign dower was brought and that the statute of limitations had not yet run.

The views of *Minor* on the question of applying statutes of limitation for entry to land to actions to claim dower are consistent with the decisions of courts in other jurisdictions where dower has been recognized.[3] In *Smith v. Werhle*, 41 W.Va. 270, 23 S.E. 712 (1895), for example, a widow brought an action to assign dower in land her husband had conveyed without her consent during the marriage. The Supreme Court of West Virginia held that the action, which involved a statute in almost the precise words of Va.Code § 8.01–236, filed 13 years after the death of the husband, was barred by the West Virginia 10-year statute of limitations for the recovery of land. The court reasoned that "the widow's legal remedies are the same as those of a tenant for life, and must be subject to the same limitations, her dower being equivalent to a tenancy for life in one-third of the estate involved. Such being the case, she is barred of her legal remedies." *Smith*, supra, 23 S.E. at 713. See also *Sperry v. Swiger*, 54 W.Va. 283, 46 S.E. 125 (1903); *Morris v. Roseberry*, 46 W.Va. 24, 32 S.E. 1019 (1899).

In view of the authorities cited we simply decline to hold that Virginia law applies the 15-year statute of limitations to other suits of ejectment for the recovery of land, but not to an action to insure the dower rights of a widow. We find support in the Virginia court's attitude toward dower. In *Fraser v. Stokes*, 112 Va. 335, 71 S.E. 545 (1911), the Court stated:

It is a good maxim that the law favors dower ... a widow will not be deprived of her dower as a rule, unless it is barred by statutory requirements for that purpose—in other words, that nothing short of the statutory requirements for that purpose will deprive a widow of her right to the lands of her husband of which he was seized and possessed during coverture.... This is a rule so well recognized that a further citation of authority is unnecessary. 71 S.E. 545.

---

**3.** See *Gridley v. Wood*, 344 Ill. 153, 176 N.E. 356 (1931); *Beall v. McMenemy*, 63 Neb. 70, 88 N.W. 134 (1901); *Thompson v. McCorkle*, 136 Ind. 484, 34 N.E. 813 (1893); *Winters v. DeTurk*, 133 Pa. 359, 19 A. 354 (1890); *Robinson v. Ware*, 94 Mo. 678, 8 S.W. 153 (1888); *Westbrook v. Hawkins*, 59 Miss. 499 (1882).

See also *Lewis v. Apperson*, 103 Va. 624, 49 S.E. 978, 980: "... [Dower] is favored by the law. Indeed, such was the favor with which it was regarded by the ancient common law that it grew into a maxim 'that the law favoreth three things—life, liberty, and dower.' " Favoring dower under Virginia law was restated by this circuit in *Kelly v. Minor*, 252 Fed. 115, 116 (4th Cir.1918), citing *Lewis*. In *Kelly* we also noted that the dower interest "is a valuable property right, which belongs to the wife exclusively, and which she cannot be deprived of by any act of her husband." *Kelly*, supra, 116.

In conclusion, we are of opinion that dower is an interest in land for which a right of entry exists in favor of a widow under Virginia law. A widow can exercise her dower rights either at law or in equity. The fact that an equitable remedy exists in addition to a legal remedy does not mean that the statute of limitations for entry to land does not apply, and we so hold that it does, in this case Virginia Code § 8.01–236.[4] We are of opinion the doctrine of laches has no application in this case and that the plaintiff's suit was timely filed.

### III

In view of our holding that laches has no application in this case, rather that the statute of limitations applies, we reverse the entry of summary judgment in favor of the defendants.

Plaintiff urges us, and very persuasively, to require the entry of summary judgment in her favor except as to the extent of her dower rights, and while that conclusion is warranted by the record as it now stands, we think that entry of such summary judg-

ment could possibly be premature at this stage of the proceeding. While the colloquy at argument between the district court and the attorneys may indicate that the case between plaintiff and defendants was in effect submitted on the merits, of that we cannot be reasonably certain from the record. Accordingly, the judgment of the district court denying summary judgment in favor of the plaintiff is vacated.

Upon remand, if there are no further proceedings, the district court will enter summary judgment in favor of the plaintiff so far as her right to dower is concerned, and will thereafter ascertain what plaintiff is entitled to in the way of dower in one of the modes prescribed by law.

As to the third party defendant, the district court's order denied as moot the motion for summary judgment made by the third party defendant because, of course, the third party complaint had become moot by virtue of its order granting defendants' motion for summary judgment. On remand, the third party complaint will be considered on its merits.

REVERSED IN PART; VACATED IN PART; and REMANDED WITH INSTRUCTIONS.

---

**4.** While we think the Virginia court would apply the 15-year statute of limitations to claims for dower, a powerful argument can be made that no statute of limitations at all applies to it, much less laches. So the argument would not be of avail to the defendants.

Dower was a Germanic custom and was apparently brought to England by the Saxons. Among the Anglo-Saxons, dower existed only in goods and was applied to lands after the Norman Conquest. It was imbedded in English law by Magna Carta. It is found in section 7 thereof, and, according to Kent, it was then in essentially the same form as to quantum of estate as it existed in Virginia until the 1977 amendment to the statute making it a fee simple rather than a life estate. Under English common law, there was no statute of limitations against claims for dower. Dower being an interest in land and recoverable by the ancient writs, laches, a creature of equity, would have had no application to such claims. See Magna Carta § 7; 4 *Kent's Commentaries* (3d ed. 1836) p. 34–72, Minor § 250.