No. 30,855.

MAY MERRITT BATES, *Appellee,* v. THE STATE SAVINGS BANK, *Appellant.*

(18 P. 2d 143.)

Opinion filed January 28, 1933.

Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, J. Arthur Myers, Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V.

*Scholes, Margaret McGurnaghan* and *Byron M. Gray,* all of Topeka, for the appellant.

*E. R. Dean, John S. Dean, John S. Dean, Jr., T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one of ejectment and for rents and profits. Plaintiff is a widow, to whom the real estate was set apart as one-half in value of real estate belonging to her husband during the marriage relation, of which she had made no conveyance. Defendant is a lessee under a lease executed by the husband alone. An answer and an amended answer and cross petition were filed. Replies to the answers were filed. A demurrer to the reply to the original answer was overruled. A demurrer to certain defenses pleaded in the amended answer was sustained, and the cross petition was stricken. Defendant appeals.

The real estate in controversy consists of a three-story business building on the lot at the southwest corner of Sixth and Kansas avenues in the city of Topeka. A portion of the building is used by defendant for its banking house. In 1904 defendant became lessee of a portion of the building. By renewals and extensions defendant became lessee of the entire premises, with privilege to remodel and improve, which has been exercised. In June, 1922, by agreement with W. L. Bates, then sole owner of the real estate and husband of plaintiff, the existing lease, expiring on July 1, 1930, was extended for the period of fifteen years, or until July 1, 1945.

On December 13, 1928, W. L. Bates died testate, leaving as his devisees his widow, the present plaintiff, three sons and a daughter of a deceased son. The widow elected to take under the law. The widow was appointed executrix. In June, 1929, by mutual consent of the parties interested, the real estate was allotted to plaintiff, and on June 24, 1929, the probate court approved and confirmed the allotment. On July 24 the order was corrected *nunc pro tunc* to describe the real estate and to specify that the allotment was subject to two mortgages executed by Bates and wife to defendant, one for $17,000, and one for $2,000. No appeal was taken from the allotment order. On July 26, 1929, the action of ejectment was commenced.

The allotment was made pursuant to statutory provisions which are appended to this opinion. These sections form part of the

statute of descents and distributions governing intestate succession. If there is a will to which the widow has consented, or if she elects to take under the will, the disposition by will is effective. If there is no will, or the widow renounces the will, the statute provides what she shall take.

The statute first provides that the homestead is exempt from distribution, and secures it to the widow, or the widow and children. (R. S. 22-102 to 22-106.) R. S. 22-108, quoted in the appendix, then requires that one-half in value of decedent's real estate forming part of his estate at the time of his death, shall be set apart to the widow in fee simple. The remainder of such real estate descends to children. (R. S. 22-118.) If there are no children, the widow takes the share which would go to children if there were children. (R. S. 22-119.) R. S. 22-108 also applies to real estate not forming part of the husband's estate at the time of his death, but in which a possessory interest accrues to the widow by allotment—that is, real estate owned and disposed of by the husband during existence of the marriage relation, of which the widow has made no conveyance. In this instance, the husband was seized of the real estate in controversy at the time of his death, and we are not concerned with the other class.

R. S. 22-127 reads as follows:

"All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs. The estates of dower and by curtesy are abolished."

The foregoing summarizes what interests in her husband's real estate the law of this state secures to a married woman who survives her husband.

Under R. S. 22-108, allotment of the widow's share must be made under direction of the probate court. The allotment shall comprise specific land in fee simple for which ejectment may be brought, and shall comprise one-half in value of all allotable land. Determination of value and of what shall be allotted to the widow as representing that value may be by consent of those interested, or may be by commissioners appointed by the court; but the final setting apart of a specific tract or tracts must be by direction of the probate court, expressed by an order of allotment. Those interested in the allotment are those whose succession might be affected by valuation or

segregation, and when the allotted share is set off by consent, notice is not necessary. When the allotment is made by commissioners, the court shall direct proper notice to be given to all parties interested.

Application by the widow for allotment by commissioners need not wait for presentation or allowance of claims of creditors, but may be made within twenty days after death of the husband, and may be made at any time within five years. By analogy, allotment by consent may occur within the same period.

Unless appealed from within thirty days, the order of allotment is final and conclusive upon those interested, respecting quantity, value and location of the allotted land. General rights of the widow to the allotted portion may be controverted. Thus, question may be raised under the proviso to R. S. 22-108 that the allottee was not widow, or was not a resident of the state. Title paramount to that of the decedent may be asserted. General rights may be controverted by or in any proceeding appropriate for determination of the issue, and may be controverted by way of defense to an action by the widow to obtain possession of the allotted land.

Defendant contends, in effect, that while plaintiff has an estate of potentially infinite duration, inheritable under the laws of intestate succession, and so an estate in fee simple, her possession must be postponed until 1945. One of the pleadings shows this would be beyond plaintiff's normal life expectancy, and the proposed qualification of plaintiff's fee-simple interest is such that the contention may be regarded as controverting plaintiff's general right to the allotted land.

The question presented is one of statutory interpretation, and the history of the statute becomes important, not because of ambiguity in its terms, but for better understanding of the reason for it, and its purpose and effect.

The present statute of descents and distributions, containing the provisions quoted in the appendix, was enacted in 1868, as chapter 33 of the Revised Statutes of that year. The basis of the chapter was chapter 63 of the Territorial Laws of 1859. The territorial act was based on the code of Iowa of 1851, section 1394 and following sections. At that time dower prevailed in almost all the states, and in 1852 Iowa returned to common-law dower. (Laws of Iowa, 1852, ch. 61.)

The Kansas statute of 1859 departed in one noteworthy particular

from the Iowa code. By the Kansas statute the widow was given one-half instead of one-third of all real estate is which the husband during the marriage had a legal or equitable interest. Both the Kansas statute and the Iowa code departed from the common law, and the statutes of other states based on the common law, in that the widow was given a fee simple instead of a life estate.

The Iowa code and the Kansas statute of 1859 contained the following section:

"Such share shall be so set off as to include the ordinary dwelling house, and the land given by law to the husband as a homestead, or so much thereof as will be equal to the share allotted to her by the last section, unless she prefers a different arrangement. But no different arrangement shall be permitted where it would have the effect of prejudicing the rights of creditors." (Kansas Statutes 1859, ch. 63, § 6.)

This section was omitted from the statute of 1868.

The Kansas territorial act of 1855 had provided for dower and curtesy. These provisions were repealed by the act of 1859. In 1860, an elaborate dower act was passed (Compiled Laws 1862, ch. 83), and the widow was given choice of taking dower or taking under the 1859 statute of descents and distributions. In 1868 dower and curtesy were finally abolished.

The legislature of 1859 passed a married women's act relieving married women of certain disabilities resulting from common-law coverture, and passed a limited homestead act. The constitution under which the state was admitted to the Union itself contained the generous homestead provision with which we are familiar (Art. 15, § 6), and subsequent legislation has of course been consonant with the constitution.

In 1868 the married women's act of 1859 was revised, and the present married women's act was passed, providing for separate property, capacity to sue and be sued as if unmarried, capacity to carry on trade or business on her own account, and capacity to enjoy her earnings as her sole and separate property and in her own name. The married women's act of 1859 provided that a married woman might sell and convey her real estate and personal property as if sole. In the revision of 1868 husband and wife were placed on a plane of equality by the following provision:

"A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property, and enter into any contract with reference to the same, in the same manner, to the same extent, and with

like effect as a married man may in relation to his real and personal property." (R. S. 23-202.)

The result of the foregoing is that, along with abolition of dower and curtesy, the last vestige of the feudal law of baron and feme was expunged from the law of this state. There can be no dispute that the system of liberal and enlightened legislation which was adopted was designed to give to a married woman while the marital relation exists, and to a married woman who survives her husband, an economic status immeasurably superior to and more secure than what she enjoyed at common law. Most certainly the legislation was not designed to impose on a woman who survives her husband disabilities from which she was exempt under the common law; and the authorities are agreed that at common law assignment to a widow of a specific tract of her husband's land as dower gave her privilege to avoid leases granted by the husband alone. (Shep. Touch. 275; Co. Litt. 46a; *Stoughton v. Leigh,* 1 Taunt. 401.) See, also, 1 Scribner on Dower, 2d ed., pp. 603, 604; 2 Scribner on Dower, 2d ed., p. 775; 1 Tiffany on Real Property, § 220, and authorities cited in support of these texts.

The case of *Stoughton v. Leigh* was decided in 1808. The opinion was written by Lord Mansfield, and the decision was followed by the court of chancery in 1892 in the case of *In re* Kemeys-Tynte, 2 Ch. Div. (1892) 211. So there is no doubt about what the common law on this subject was previous to enactment of the Kansas statutes of 1859 and 1868.

It necessarily follows from the nature of the statute that the widow's fee simple meant fee simple with possession. As a matter of tenure, the widow holds as heir of her husband. When he dies she is one who succeeds to his estate. But her heirship has distinctive features. She takes land which other heirs could not inherit because the husband had conveyed it, and she has an increment of interest over other heirs in the lands of which her husband died seized. She may promptly, by summary proceeding, have her share set off to her by metes and bounds. The purpose of allotment out of a larger area is that the widow may have possession. She has remedy to obtain immediate possession, and the legislature did not contemplate that speedy occupancy of her tract could be obstructed by act of her husband in making a lease without her consent.

There is nothing in the statute which makes defendant's lease void because it was granted without plaintiff's assent. Land leased for years descends, subject to the lease, to heirs who are bound as the ancestor was bound. But the widow may avoid the lease so far as it relates to the specific tract set off to her. She has five years after her husband's death in which to invoke summary proceedings for allotment. Meantime, the tenant may occupy and the widow may accept rent; and if plaintiff had predeceased her husband, the lease would have been valid for all purposes.

Defendant contends the lease executed by plaintiff's husband was not a conveyance, but created a mere chattel interest in the land, and an argument antagonistic to plaintiff is built upon defendant's definition of the word "conveyance." Under the statute it is not important what the husband does; it is what the wife does which bars her. Literally, plaintiff takes unless she has made a conveyance, and she has made no conveyance, whether by deed or otherwise.

The word "conveyance" is a flexible term, the meaning of which is to be determined according to the manner in which it is used. For this reason, the American Law Institute has defined the word in a colorless way indicating an act directed toward creation of an interest in land, but without implication of legal consequence:

"SECTION 8. *Conveyance.* (1) The term 'conveyance,' as it is used in the restatement of this subject, means an act by which it is intended to create one or more property interests, irrespective of whether the act is effective to create such interests.

"(2) The verb 'to convey,' as it is used in the restatement of this subject, means 'to make a conveyance.'" (Restatement, real property.)

Blackstone defined an estate for years as follows:

"An estate for *years* is a contract for the possession of lands or tenements for some determinate period; and it takes place where a man letteth them to another for the term of a certain number of years agreed upon between the lessor and lessee, . . ." (2 Com. 139.)

Of course an estate is not a contract. An estate for years is an interest created by contract, and so considered, Blackstone's definition well describes an estate for years. If, in this instance, plaintiff had joined in her husband's lease, she would be bound by the contract, however the instrument might be classified.

Plaintiff's answer contains the following allegation:

"On the —— day of ——, 19——, said W. L. Bates died in Shawnee county, Kansas, being seized, at the time of his death, in addition to the property described in plaintiff's petition, of more than one-half in value of

all the real estate in which he had, during his marriage with plaintiff, a legal or equitable interest and of which plaintiff had made no conveyance."

On the basis of this allegation, defendant challenges validity of the allotment which was made. The answer stated no defense to the action. In effect the allegation is that the real estate allotted to plaintiff is less than half the value of all of her husband's real estate. How much less is not disclosed. No facts are pleaded indicating that in law or in equity the widow's allotment could have been made out of the other portion without prejudice to her. So far as the answer discloses, the other portion may have been subject to leases executed by W. L. Bates alone of longer duration than the lease to defendant; and the allotment which was made by the probate court is *prima facie* evidence that it was necessary for protection of plaintiff's rights.

In its answer defendant pleaded facts occurring before death of plaintiff's husband, by way of estoppel of plaintiff to take her allotment discharged of the lease. Among the facts pleaded was expenditure by defendant of large sums of money in improvement of the real estate. Plaintiff demurred to this portion of the answer. Plaintiff then withdrew the demurrer, and replied at length, raising issues of fact. The issues have not been tried, and the facts not having been determined, none of them can be considered in this appeal.

The answer and cross petition prays that in the event plaintiff should recover possession, the real estate be charged with a lien for improvements in the sum of $40,000 made under contract relating to improvements contained in the lease.

From Anglo-Saxon times to the present, the widow has been obliged to contend against two adversaries to a just and humane allowance of dower, or statutory substitute for dower: the autocratic dominion of the husband over his land, and the rapacity of the heir after the ancestor's death. Notwithstanding the lip service paid by courts to the sacredness of dower, they have frequently manifested a disposition to curtail the widow's dower estate. Technicalities of the law were employed against her. Expedients for barring dower were sanctioned. When uses and trusts were invented, equity departed from the law and refused to allow dower out of trust estates. Powers of appointment were permitted to be used to defeat dower, but to afford the husband all the advantages of an estate of inheritance. (3 Holdsworth's History of English Law, 189-197.)

In this country equity has been successfully invoked to minimize the benefit to her of the widow's portion.

As late as 1909 the chancery division of the English court had before it a case of delayed application for assignment of dower for land which had become valuable for building purposes. In the argument for coheirs it was urged it would be unfair for the doweress to get the benefit of a building lease which she could not have granted. Couzens-Hardy, M. R., said:

"Lord Coke says the widow must take the improved value: Co. Litt. 32a. We must accept that, unless you can show a course of authorities against it." (*Williams v. Thomas*, 1 Ch. Div. [1909] 713, 717.)

The unanimous decision of the court was that dower should be assigned as of date of her husband's death and not as of date of assignment, pursuant to the passage in Co. Litt. 32a. This is the rule in the United States. In England the same rule applied in case of alienation by the husband. Notwithstanding the alienee improved the land, dower was assigned as of the date of the husband's death, and not as of date of alienation by the husband. (*Doe d Riddell v. Gwinnell*, 1 Q. B. 682 [1841], opinion by Lord Denman, C. J.) In this country a different rule prevails. The basis for the rule in the United States is that the alienee might not improve the land if the widow were to have improvements made by the alienee included in the assignment of dower, and improvements are good for the country. Somewhere in the books is some intimation it might be for the good of the country to make definite, easily measurable and adequate provision for widows and broods of little children. This court does not have before it a case of alienation by the husband, and expresses no opinion on the subject. What is said here is merely intended to introduce an illustration of how "equity" may work on the widow's dower. In the recent case of *Gridley v. Wood*, 344 Ill. 153 (1931), the court gave the screw one more turn, and held a grantee of the husband should be allowed for improvements which he made after dower had become consummate by death of the husband, and before assignment of dower.

In this instance, under the statute of this state, the lessee has no more right, by virtue of its lease, to a lien for improvements, than it has right to possession; and the widow took subject only to the liens specified in the order of allotment.

As indicated above, the lot set off to the widow was subject to the

liens of two mortgages to defendant aggregating $19,000. The mortgages were not foreclosed, but the indebtedness secured by the mortgages was presented as a claim against the decedent's estate. The claim was not contested. The probate court issued an order for sale of the real estate to pay the claim. An appeal was taken to the district court from the order to sell, and the appeal has not been determined. The proceedings had no effect on the widow's title or on her right to possession from the date of the order of allotment. Should the order of sale be finally confirmed and the land sold, she will be entitled to the proceeds of sale, if any, above the amount necessary to satisfy the claim.

The allotment to the widow was subject to payment of debts. Defendant contends that by the lease W. L. Bates impliedly warranted defendant should have peaceable possession of the premises to the end of the term, and if plaintiff should be put in possession the covenant would be broken and defendant would suffer great damage, which would constitute a claim against the lessor's estate. Therefore, defendant filed a claim against the lessor's estate, allowance of which is to be contingent on the result of this lawsuit, and to avoid circuity of action, the contingent claim was set up in defendant's answer.

If defendant's contention is well founded, the result would be an enormous judgment which would consume plaintiff's allotment for its satisfaction, and W. L. Bates could by indirection defeat plaintiff's fee simple by a long lease for years in which she did not join. We are reminded here of an ancient device for defeating dower, existing before the beginning of the reign of Edward I. The husband would make conveyance with warranty, and then suffer a common recovery.

The common law of implied warranty may not be invoked to defeat the statute of descents and distributions. The husband cannot directly or indirectly defeat the widow's right by implied obligation arising upon a lease to which she has not assented. The husband may not do this any more than a tenant for life could create a liability against his estate for breach of implied warranty of possession by a lease for years extending beyond the period of his life. There is no dispute that the common law did not permit this, and the implied warranty of peaceable possession under the lease was subject to a condition as effective as if expressed in the lease: "subject, however, to the rights of the widow of the lessor under the statute of descents and distributions, should he die within the term."

Defendant portrays the evils of the restraint on alienation which will result if the landowner may not freely make leases without consent of his wife, and defendant lays special stress on the family discord, oppression of the wife by the husband, and economic disadvantage of the wife if she may not freely make leases of her land without her husband's consent.

The problem of the ages has been to reconcile power of alienation with claims of the family. The legislature was inaugurating a system of land law for a pioneer state. The subject of long-term leases was not then as important as now, probably was not important at all; but, as indicated elsewhere in the statute book, the legislature did contemplate the leasing of land. In fixing the public policy of the state by the legislation which has been recited, protection of the family was manifestly the dominant thought, whether wife or husband died first. During their joint lives husband and wife were left to adjust between themselves disposition of real estate which would have effect, after death of one, on the economic status of the surviving family. Experience of some sixty-five years since the law took settled form, demonstrates the law has not stifled or impeded growth in material welfare of the people of the state, or fomented marital infelicity.

So far as a lessee for years under a lease granted by one spouse alone is concerned, the lessee takes at his own risk. He is not an innocent purchaser, because the law in effect writes into his lease the condition proposed above. He cannot found rights on failure or neglect to obtain joint consent, and if he cannot assure himself, he must take the business hazard, or seek a lease elsewhere.

In the case of *Perkins v. Morse,* 78 Me. 17 (1885), cited and urged by defendant, the syllabus reads:

"The statutory enactment, that a wife cannot, without the joinder of her husband, convey real estate conveyed to her by him, or paid for by him, or given or devised to her by his relatives, does not prevent her legally leasing the premises in her name alone for a term of years."

In that case, husband and wife were both living, neither dower nor widow's intestate succession under some statute similar to that of the state of Kansas, was involved, and what the court said in the opinion necessarily related to the case under decision.

It will be observed the statute interpreted by the Maine court was peculiar, and the court commented on the great difficulty besetting a person contemplating taking a lease, in finding out whether

he could safely do so. However, the only answer made by the court to the proposition that if the wife could lease for two years she could lease for ninety-nine years, was this: Presumably rent would be reserved in a lease, and a lease is different from a conveyance, under which the grantee might commit waste. Why there would be more likelihood of waste of his own land by an owner in fee than there would be by a tenant for ninety-nine years, is not apparent. And what about a long-term lease of land so improvidently granted that, by the time the surviving spouse came in, the rent reserved would not pay taxes on the normal increase in value of the land?

Following the method of the supreme court of Maine, this court interprets the statute of this state as the court finds it; and the court holds that in this case the lease by plaintiff's husband does not bar her from possession of the real estate involved, free from lien or threat of appropriation consequent upon the act of her husband. If the restriction on alienation imposed by the statute of descents and distributions, as this court interprets the statute, is too onerous, the legislature may lessen or remove the restriction, but not this court.

The judgment of the district court is affirmed.

THIELE, J., not participating.

-----

### APPENDIX.

"22-108. *Setting apart half of realty to widow by personal representative on death of husband; evidence of marriage.* One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executors or administrators as her property, in fee simple, upon the death of the husband, if she survives him: *Provided,* That the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance, when the wife, at the time of the conveyance, is not and never has been a resident of this state. Continuous cohabitation as husband and wife is presumptive evidence of marriage, for the purpose of giving the right aforesaid.

"22-109. *Setting apart such share by consent or by commissioners.* The share thus allotted to her may be set off by the mutual consent of all the parties interested when such consent can be obtained, or it may be set off by commissioners appointed by the probate court.

"22-110. *Application for such allotment.* The application for such allotment by commissioners may be made at any time after twenty days, and within five years after the death of the husband, and must specify the particular tracts of land in which she claims her portion, and ask the appointment of commissioners.

"22-111. *Time for making allotment.* The court shall fix the time for making the allotment, and direct such notice thereof to be given to all parties interested therein as it deems proper.

"22-112. *Survey and report by commissioners; surveyor.* The commissioners may employ a surveyor if necessary; and they must cause the widow's share to be marked off by metes and bounds, and make a full report of their proceedings to the court as early as practicable.

"22-113. *Failure of commissioners to act.* The court may require a report by such time as it deems reasonable, and if the commissioners fail to obey this or any other order of the court, it may discharge them and appoint others in their stead, and may impose on them the payment of all costs previously made, unless they show good cause to the contrary.

"22-114. *Action on report.* The court may confirm the report of the commissioners, or may set it aside, and refer the matter to the same or other commissioners, at its discretion.

"22-115. *Effect of confirmation; possession.* Such confirmation, after the lapse of thirty days, unless appealed from according to law, shall be binding and conclusive as to the allotment; and she may bring suit to obtain possession of the land thus set apart for her.

"22-116. *Rights of widow may be controverted.* Nothing in the last section shall prevent any person interested from controverting the general rights of the widow to the portion thus allotted.

"22-117. *Widow's portion not affected by will of husband.* The widow's portion cannot be affected by any will of her husband, if she objects thereto, and relinquishes all right conferred upon her by the will."