No. 33,935

ORR BRANT, PAUL BRANT and VERNE BRANT, *Appellants*, v. LUDVIG NELSON and O. W. NELSON, *Appellees*.

(83 P. 2d 684)

Opinion filed November 5, 1938.

*W. H. Carpenter* and *W. R. Carpenter*, both of Marion, for the appellants.

*Owen S. Samuel*, of Emporia, *Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action to establish and enforce a trust in relation to real property and for specific performance. Counsel did not ask the trial court to make findings of fact and conclusions of law, under G. S. 1935, 60-2921, but in deciding the case the court filed a written opinion, generally finding for plaintiffs, but making specific findings on the principal facts, with its conclusions of law, and which contained argument and citation of authorities in support of the conclusions reached. The trial court decreed specific performance against the defendants, but declined to decree specific performance against the wife of one of the defendants, who was not a party to the action and who had not signed the written agreement which the court held binding on her husband. The court also denied plaintiffs' motion, later made, to abate the price to be paid by plaintiffs for the property, upon the evidence offered. Plaintiffs have appealed.

The facts as shown by the record and found by the court may be summarized as follows: Prior to the time of the matters which gave rise to this controversy plaintiffs were the owners of a ranch of 3,120 acres in Chase county, of which about 435 acres were good creek-bottom farm land, the balance grazing land. It is well improved and was used for growing and feeding livestock. It was encumbered for $90,000 in the form of two mortgages made to a joint-stock land bank and later owned by the Farm Mortgage Holding Company. These mortgages became in default and were foreclosed in October, 1934, when the judgments amounted to $108,-446.72. The sheriff's sale was held December 31, 1934, at which the Farm Mortgage Holding Company purchased the property for the full amount of its judgments, interest, taxes and costs. The sale was confirmed, and the period of redemption was fixed at eighteen months, at the expiration of which, or about July 1, 1936, a sheriff's deed was issued to the purchaser, and this was recorded. Under some lease or rental arrangement plaintiffs remained on the premises. At some time within the period of redemption the Farm Mortgage Holding Company had offered to take $65,000 for its certificates of purchase, and plaintiffs had endeavored to get a loan from the

Federal Land Bank at Wichita, and possibly from other sources, to purchase them, but had been unable to do so.

About December 1, 1936, the Farm Mortgage Holding Company gave to J. E. Bocock, a real-estate broker at Cottonwood Falls, the exclusive option for thirty days to sell the ranch for $80,000. To facilitate the sale Bocock divided the ranch into three parts, the grazing land into two parts, and a third part consisting of the farm land with a small pasture. This action is concerned only with this third part, on which are the ranch improvements. On December 10, 1936, Bocock entered into a written contract with Carl B. Cowley (acting for himself and C. A. Cowley) for the sale of this tract. This sufficiently described the land, but in general terms, and the Cowleys agreed to pay $70 per acre for the farm land and $18 per acre for the small pasture, the land to be surveyed to ascertain the exact acreage and the aggregate price, which it was thought would amount to about $30,000. The Cowleys paid $1,000 on the purchase price at the time the contract was entered into and agreed to pay the balance by March 1, 1937, at which time they were to have possession of the property. This contract contained appropriate provisions for the furnishing of abstracts and deed by the seller, and was contingent upon Bocock's ability to sell the two tracts of grazing land at a price so the aggregate sale price of the ranch would be as much as $80,000. The record appears to take it for granted that Bocock was able to do this, and on December 29, 1936, a formal contract was executed between the Farm Mortgage Holding Company and Carl B. Cowley for the sale of this property. In it the land was specifically described. The purchase price was fixed at $29,322.58, of which $2,000 was acknowledged as paid, the balance to be paid in cash on the delivery of the deed on or before March 1, 1937. It contained appropriate provisions for the furnishing of abstracts, and recited the property was then leased or rented to the plaintiffs herein until March 1, 1937, and the seller agreed to give possession on that date.

In December, 1936, plaintiffs were still trying to get a loan from the Federal Land Bank that would enable them to buy the ranch. They learned of the Cowley contract and one of them told Carl B. Cowley that his contract interfered with their plans to get a loan and buy the ranch. Cowley said he would turn his contract over to them if he was paid the money he had paid on it. Bocock hesitated to take plaintiffs on the contract in lieu of the Cowleys,

being fearful they would not be able to pay the balance of the purchase price by March 1, 1937. Plaintiffs then went to the defendant, Ludvig Nelson, and entered into an oral agreement with him whereby Nelson agreed to purchase the real estate for the benefit of plaintiffs, and plaintiffs agreed to pay Nelson the purchase price he had to pay for the property plus the sum of $1,000, which money plaintiffs were to obtain by a loan on the property through the Federal Land Bank, and when Nelson was so paid he was to deliver abstracts and convey the property to plaintiffs. No time was agreed upon for the consummation of the transaction. Plaintiffs were to secure the payment to Nelson of the extra $1,000 by a deed or mortgage on a quarter section of land in Butler county which they represented to own, but this security never was given.

After making this oral agreement plaintiffs and Ludvig Nelson had a conference with Bocock and Carl B. Cowley, as a result of which Cowley assigned to Nelson the contract he had for the purchase of the land, and Nelson agreed to carry out its provisions and to hold Cowley harmless from any liability on the contract. This assignment was executed January 7, 1937. Thereafter and on about March 1, 1937, Ludvig Nelson paid the balance of the purchase price and received and recorded a deed to him for the property from the Farm Mortgage Holding Company. The court specifically found "that the plaintiffs did not, prior to the execution and delivery of said deed, on March 1, 1937, pay to the defendant, Ludvig Nelson, the purchase money, or any part thereof, that they had agreed to pay pursuant to said oral contract."

Thereafter, and on March 19, 1937, after some talk between plaintiffs and defendant as to whether they could farm the place and when they might pay him the money they had agreed to pay him, the parties entered into a written agreement, by the terms of which Nelson leased to plaintiffs the property for the period from that date to February 28, 1938. This is a somewhat usual form of farm lease, providing for cash rental for the small pasture on the premises and for a share of the grain and hay on the farm land, and contained this paragraph:

"It is mutually understood and agreed between the parties hereto that this lease is made with the understanding that said second parties have been granted an option to buy said premises for the cash purchase price paid to party of the first part in the sum of $31,529.10 to be paid to him on or before April 1, 1937. In the event said second parties shall exercise said option and pay said first party or offer to pay him said sum of $31,529.10 on or before

April 1, 1937, then this lease shall be null and void, otherwise to remain in full force and effect during said period of one year, that is to say, ending February 28, 1938."

The sum named in this paragraph was the amount Nelson had paid for the property, plus the $1,000 plaintiffs had originally agreed to pay him. This. lease, containing the above option, was executed by the plaintiffs and by the defendant Ludvig Nelson. Plaintiffs continued in possession of the property and renewed their efforts to get a loan from the Federal Land Bank which would enable them to buy it, which at that time they thought could be done in a few days. The court specifically found that after the execution of the lease and option agreement, and before April 1, 1937, plaintiffs and Ludvig Nelson entered into an oral agreement whereby the time and mode of performance of the written option contract was modified and the time of performance was by mutual agreement and considerations of the parties extended until plaintiffs could obtain a loan from the Federal Land Bank to pay Nelson for the premises. The court further found that on May 1, 1937, and before the option agreement as orally extended had expired, the defendant Ludvig Nelson, and his wife Selma, executed a deed to an undivided one-half interest in the property to his brother, O. W. Nelson, who at the time had full knowledge of the oral extension of the written option, and took the deed subject thereto.

The court further found that plaintiffs obtained approval of their loan from the Federal Land Bank on May 13, 1937, and immediately advised Ludvig Nelson of such approval, and that without any reason therefor Ludvig Nelson refused to consummate the deal, and refused to deliver plaintiff's abstract of title which he had received to the premises and which he had agreed to deliver so that the same might be extended and examined for the purpose of the loan to be obtained by plaintiffs.

To save repetition, we will consider the trial court's conclusions of law in connection with the points argued by appellants.

Appellants contend the trial court erred in finding that no trust arose in favor of plaintiffs, and that their oral contract was unenforceable. One of the court's conclusions was: "Because the plaintiffs did not pay the purchase money, or any part thereof, at the time or before the land was purchased by defendant Nelson and he acquired title thereto, no trust arose in favor of the plaintiffs and the oral agreement between plaintiffs and defendant Nelson was un-

enforceable," citing *Kaul v. Hoenshell*, 129 Kan. 278, 282 Pac. 697, and "that on March 1, 1937, the defendant, Ludvig Nelson, was and became the full legal and equitable owner of the real estate involved in this case."

Considering the findings of the court respecting the oral agreement between plaintiffs and Ludvig Nelson, made in December, 1936, and the further finding that plaintiffs failed to pay by March 1, 1937, the purchase money, or any part thereof, that they had agreed to pay, pursuant to their oral contract, perhaps this conclusion of law could have been more accurately stated had the court said that such trust relations as had arisen from the oral agreement between plaintiffs and Ludvig Nelson had terminated by plaintiffs' failure to pay pursuant to the oral agreement. We think this is the correct interpretation of the court's findings of fact and conclusions of law on this point, and we see nothing wrong with it. Counsel for appellants cite several cases in which courts have held a trust relation grew out of transactions between a principal and agent. Ludvig Nelson can hardly be said to have been the agent of plaintiffs. More properly, they dealt with him at arm's length. For a consideration, which plaintiffs agreed to pay or secure to Nelson, which payment they never made and which security they never gave, he agreed to take over the Cowley contract and to turn the property over to plaintiffs on the payment to him of the money he paid out, plus $1,000. Now, if they did not do that, pursuant to their agreement, whatever rights they had under this oral contract necessarily were lost. In the briefs counsel cite our statute of frauds and our statute of trusts and many authorities dealing with various phases of those questions. We shall not review these authorities, or analyze the discussion, for the question whether any trust agreement existed between these parties becomes academic if we approve, as we do, the holding of the trial court that Ludvig Nelson obtained full title to this property by the deed to him from the Farm Mortgage Holding Company of March 1, 1937. The soundness of that holding is made clear by the next point to be considered.

Appellants complain of the conclusion of law of the court that when the written contract and lease containing an option for plaintiffs to purchase the property. was executed between the parties in March, 1937, all prior negotiations with respect to the purchase of the property were merged and became a part of the written contract. We approve of this holding of the trial court. More

than that, when plaintiffs executed this instrument they recognized in writing that Ludvig Nelson was the owner of the property, and they became his tenants. Their relation to the property as such tenants is inconsistent with any claim on their part of ownership. The effect of this was to recognize the fact, held by the court in the conclusion of law above discussed, that Nelson became the legal and equitable owner of the property when he made the final payment to the Farm Mortgage Holding Company and procured its deed to him for the property.

Whatever may have been the prior oral agreement between the parties this written instrument effectively fixed the status of plaintiffs as tenants and of Ludvig Nelson as owner. It also fixed the conditions under which plaintiffs could purchase the property, then recognized as being owned by Ludvig Nelson, the amount they would have to pay for it, and the time within which they had to make payment.

The trial court found the time within which plaintiffs were given in the written agreement to exercise their option to purchase was extended by mutual agreement and considerations of the parties, and that within the time so extended plaintiffs were ready to perform, and so advised Ludvig Nelson, who, without reason, refused to recognize their right to do so. The court further found that O. W. Nelson took title to an undivided one half of the property, with full knowledge of plaintiffs' option to purchase, and that the time for them to do so had been lawfully extended, and held that he took such deed subject to the rights of plaintiffs to exercise their option to purchase. These findings are as favorable to plaintiffs as the evidence pertaining to them warrants, and naturally appellants did not complain of them, and since there is no cross-appeal the correctness of these findings is not before us for review.

The court therefore decreed specific performance in favor of plaintiffs and against Ludvig Nelson and O. W. Nelson. Because the wife of Ludvig Nelson was not a party to the action, and because she had not signed the written agreement by which plaintiffs were given an option to purchase the property, the trial court refused to decree specific performance as against her. Plaintiffs objected to these findings and conclusions, and asked the court to hold that the wife of Ludvig Nelson had no title or interest in the property. This the court declined to do. Since plaintiffs had chosen not to make the wife of Ludvig Nelson a party defendant they were not entitled

to ask any decree against her. Appellants concede that if Ludvig Nelson obtained the legal and equitable title to this property by the deed to him from the Farm Mortgage Holding Company, and his wife should outlive him, she would be entitled to have set off to her an undivided one-half interest in the property to which she had not made a conveyance. (G. S. 1935, 22-108.) Since she had joined her husband in the deed to O. W. Nelson for an undivided one-half interest, the share that might be set off to her in the event her husband died before she did would be a one-fourth interest in the entire tract. (But see *Bates v. State Savings Bank*, 136 Kan. 767, 18 P. 2d 143.)

After the trial court had held that it could not decree specific performance against the wife of Ludvig Nelson, plaintiffs filed a motion asking the court to abate the price which they would have to pay for the property in purchasing it under their option, as extended, by reason of the fact that their title would be imperfect, and offered evidence as to the amount of such abatement. This evidence did not disclose the age or the condition of health of Ludvig Nelson or of his wife. It consisted of the testimony of persons who had seen Ludvig Nelson several times. Some of them were fairly well acquainted with him, but none of them knew his age, with any degree of accuracy, or anything about the condition of his health, except from his general appearance. None of them knew anything about the age or condition of health of Mrs. Ludvig Nelson, and had seen her only casually on the street once, or a few times. The trial court was of the opinion that this evidence was too indefinite and uncertain, and too speculative in its character, to form any basis upon which he could fix an abatement of the price. We agree with the court, that there was no substantial, competent evidence upon which an abatement of the price could be fixed, if, indeed, such abatement would be proper, a question we are not called upon here to determine.

Appellants complain that the trial court, having tentatively received certain testimony, later struck it out. There are two classes of this testimony. One pertains to statements between plaintiffs and third parties about the time of their oral agreement with Ludvig Nelson. As to this complaint, there are two answers: (1) The court found the oral agreement to be substantially in accord with the testimony of plaintiffs, which was controverted in part; and (2) the written agreement executed by the parties in March, 1937, is controlling between the parties since that time. The other class

of testimony pertains to conversations between plaintiffs and a third person (and defendants' effort to impeach that in part), which plaintiffs communicated to Ludvig Nelson shortly prior to April 1, 1937, and which, in part at least, induced Nelson to extend the time in which plaintiffs could exercise their option to purchase the property. Since the court found that time was lawfully extended, and no one on this appeal complains of that finding, the soundness of the ruling is unimportant. More than that, we think the ruling of the court was correct in each instance.

We find no error prejudicial to appellants in the record. The judgment of the court below is affirmed.